## FELLOWS and others *vs.* STEVENS.

A creditor who has signified his assent to a composition between his debtor and the creditors at large of such debtor, cannot subsequently withdraw his assent without the consent of the debtor ; but if such consent be given, the debtor cannot afterwards set up the agreement for a composition, in bar of an action for the recovery of the original demands.

Assent to a composition may be as well by surrendering debts and taking composition notes, as by signing and sealing a composition deed.

A composition as to simple contracts, may be by *parol*, but whether to affect debts due by *speciality*, it should not be under seal, *quere*.

As between a debtor and creditor, an *accord* to accept a less sum than the whole debt, is no bar, though satisfaction be tendered ; but if the accord extend to *all* the creditors of the debtor, it is otherwise.

ERROR from the superior court of the city of New-York. The plaintiffs, Fellows, Read & Co. commenced an action of assumpsit against Stevens on five promissory notes, the last of which bore date on the 14th September, 1836, amounting, together with the interest thereof on the day of trial, to $5020,18. The defendant pleaded non-assumpsit and payment, and on the trial of the cause produced in evidence a deed of assignment executed by him on 17th *November*, 1836, to *John Heath*, conveying to him his stock in trade as a jeweller, and other property, *for the benefit of all his creditors*, giving a preference to certain of them. On 5th *December*, 1836, the defendant made *proposals* in writing to his *business creditors* ( in which he stated that he had *suspended* the execution of the assignment made by him to Heath) to settle with them as follows : on the surrender of their actual claims against him he would give to them respectively his notes at six, twelve and eighteen months from the date of the proposals, of equal amounts, *making together* 75 *cents on the dollar*. If the creditors preferred *to settle at once by receiving goods, he offered to give them 66 [ *295 ] per cent. ; in the proportion of 36 per cent. in precious stones, not set, at first cost, and 30 per cent. in jewelry at wholesale prices. The contract to be binding as soon as *creditors to the amount of two-thirds of the total of his business debts* would accept the proposals. A number of the defendant's creditors, whose debts amounted to upwards of $26,000, and *among whom were the plaintiffs in this cause*, accepted the proposals by a writing endorsed on the same. In pursuance of these proposals a large number of the creditors of the defendant, and *amongst whom again were the plaintiffs in this case*, on the 16th *December*, 1836, executed an instrument under seal, consenting that *Heath* should *reassign* the property conveyed to him to the defendant, and releasing him from all liability under the assignment ; and on the 29th *December* 1836, *Heath* accordingly by deed *reassigned* the property to the defendant. On the 26th *December*, 1836, the

defendant signed a paper writing in these words : " It is understood by me that the signature " of *Fellows, Read & Co.* to the paper *releasing* John " Heath as assignee of my effects, shall be void, unless assented to after " this date." And in consequence of such writing, Fellows subsequently *obliterated* the name of his firm from the *consent* given to Heath to re-assign ; which obliteration was made after all the creditors, except two, had executed the instrument. On the 28th *December*, 1836, the plaintiffs offered to accept the note of a friend of the defendant at six months for the debt due to them, deducting 50 per cent. from the amount due. This proposition was not accepted, nor has any part of the debt due to the plaintiffs been paid, or compromised according to the *proposals* of the defendant. *Two-thirds* of the creditors in amount never signed the *acceptance* of the proposals, though nearly all of them, and at all events *more than two-thirds in amount*, executed the instrument consenting to the re-assignment by Heath, or settled with the defendant according to the terms of the proposals. The plaintiffs were the second in order who signed the consent that Heath should re-assign the property to the defendant. The evidence being closed, the plain-

[ *296 ] tiffs claimed that they *were entitled to recover *the whole, amount* of the defendant's indebtedness to them, to wit, the sum of $5020,18, and at all events that a verdict should be rendered in their favor for such sum as the two notes at *six* and *twelve* months, which were to have been given according to the proposals of the defendant of 5th December, 1836, would amount to ; which notes would have become due previous to the commencement of this suit, which was commenced on 16th May, 1838. The court decided that the plaintiffs *were not entitled to recover* the amount of the five notes, or any part thereof, and directed a *nonsuit* to be entered ; which was accordingly done. The plaintiffs sued out a writ of error.

*B. W. Bonney*, for the plaintiffs in error.

*J. Anthon*, for the defendant in error.

*By the Court*, COWEN, J. The matter upon which the defendant relied as constituting a bar, ran through considerable time and was made up of divers circumstances. Those which followed the proposals were, in the language of some of the witnesses, all based upon them ; and each must be regarded, in estimating their operation, as parts of a single transaction. That was intended to be a general composition with the creditors of the defendant by which he should be released from his debts. Several objections were made in the course of the trial to single pieces of testimony at the time of their being offered, such as the proposals, because all the names except those of the plaintiffs below were stricken out ; and the consent to Heath's re-as-

Utica, July, 1840.—Follows v. Stevens.

signment, because the plaintiffs' names were obliterated. But the only true way in which to appreciate the defence is to look at the combined force of the facts, after the proposals had been followed out to an actual settlement with about all the business creditors except the plaintiffs. - Beside the obliteration by consent, as a sign that the proposals had been consummated by actual settlement with those whose names were obliterated, formed no objection. And *that was the object as finally proved. The [ *297 ] reason for the plaintiffs' names being obliterated was also given in the course of the trial.

One difficulty now made is the want of a compliance with that clause of the proposals, which provided that they should be binding as soon as two-thirds of the total of business creditors would accept them. This was no doubt a condition precedent, without a compliance with which the defence goes for nothing. It is supposed, by the plaintiffs' counsel, that the condition could be fulfilled in no other way than by creditors to two-thirds in amount actually signing the written acceptance at the bottom. That was not done. The number and amount were a good deal enlarged by signatures to the paper, by which it was consented that Heath should reassign ; and finally, either by signing some paper or actual acceptance of securities under the proposals, and generally by one or the other act, a clear amount of more than two-thirds acceded. I am inclined to think that this was sufficient to satisfy the condition. That was not expressed to be a written acceptance ; nor is there any thing in the nature of these compositions requiring that all or perhaps any of the parts which go to make them up, should be in writing. Their effect as a discharge is based not so much upon the sort of instruments or other acts by which they are effected, as upon their being an agreement upon sufficient consideration among the several parties, the debtor on the one side, his creditors on the other, and the latter among themselves. They take up the matter and some of them incur a good deal of trouble and expense of time for the purpose of securing to themselves some part of a wasting wreck, to which is very commonly added the humane design of relieving an unfortunate debtor. Such at any rate is the frequent consequence ; and that is sufficient to conciliate a favorable interpretation at the hands of the common law. There need not, that I can see, be a seal, or any other formal solemnity. To do the whole by parol would be exceedingly loose, and often unavailable for want of adequate proof; but where the debts reside in simple contract, I see no reason, if clearly proved, why an oral *composition would not be equal to any oth- [ *298 ] er. The law, on finding a valid consideration, regards the act as a modification of, or substitution for, the various contracts on which the debts are due to the creditors ; a cutting of them down, and renewal for good consideration in a qualified form. This is sometimes based upon a sim-

ple meeting and resolution of the creditors. That was the form in *Boothby* v. *Sowden*, 3 *Campb.* 175, in which Lord Ellenborough adverted to the principle on which these compositions are sustainable. *Cranley* v. *Hillary*, 2 *Maule & Selw.* 120, was a case of resolutions. *Steinman* v. *Magnus*, 2 *Campb.* 124, 11 *East*, 190, *S. C.*, related to an agreement unsealed, which was also holden valid. In *Bradley* v. *Gregory*, 2 *Campb.* 383, the agreement by which the plaintiff lost his remedy was by parol, and went mainly on other creditors being drawn in to execute a composition deed upon the faith that the plaintiff would join. *Vid. per Buller, J.* in *Heath* v. *Crookshanks*, 2 *T. R.* 27, 8; also *Turner* v. *Hoole, Dowl. & Ryl. N. P. Cas.* 27, 8, *per Abbott, C. J.* To affect debts due by *specialty* would perhaps require a seal, on the principle *eodem modo quo oritur, eodem modo dissolvitur*; but short of that, an oral agreement, on good consideration may modify or totally defeat a simple contract, accordingly as one or the other may appear to have been intended by the parties. *Allen* v. *Jaquish*, 21 *Wendell*, 630, 3. The additional creditors who signed the assent that Heath might re-assign, with the express view of carrying out the proposals, became, in substance, as much parties to the acceptance intended by the proposals, as if they had joined in signing the written acceptance at the foot of the paper itself. Each paper was but a part in the general machinery. Signing one, was a signing of the other; and the same effect may, I think, be predicated of those who, without signing either, came in, surrendered their original debts and took composition notes, with knowledge of the proposals and an intent to make themselves parties to the common arrangement.

The objection, therefore, that here was not a technical release [ *299 ] by the plaintiffs, and no technical accord and satisfaction, *is wide of the case if either are to be taken as parties to the composition; and as accepting a satisfaction within the meaning of that term when applied to such a proceeding. This brings us to the question whether such a satisfaction is predicable of these plaintiffs. As between them and the defendant alone, there could be no satisfaction short of actual payment to the full extent of the debt, or the acceptance of a collateral thing. A mere accord is no bar, even though satisfaction be tendered. This was holden by *Heathcote* v. *Crookshanks*, 2 *T. R.* 24, even where all the creditors came in and were made parties pursuant to a general composition. There the composition money was actually tendered to the plaintiff; but even this was holden not to be sufficient, because it was not expressly pleaded that the plaintiff's agreement to accept it was in consideration of all the creditors coming in. Buller, J. admitted, that if the latter had been averred, the accord and tender might have been a bar. That I take to be settled by the subsequent cases, and to constitute the sole distinction between a private accord of the immediate parties, and one which is common to

them and other creditors. In the latter case, a tender of satisfaction will do; in the former, there must be an actual acceptance. In the latter case, third parties have come in and taken their place by the side of the debtor; and both acting in good faith, and following up the terms of the composition to a tender, a legal bar may be raised short of the common abstract notion of a technical satisfaction. The whole seems to operate like a covenant not to sue. True, there is no estoppel as in that case, grounded on the de- sire of the law to prevent circuity of action; but rather an estoppel *in pais*, third persons being brought in to perform acts amounting to value, in consideration of the plaintiff's promise to accept the composition money or security as a total discharge. The cases have been already cited; and the remaining question is, whether the evidence in the court below brought these parties within the sphere of their influence.

The plaintiffs below began heartily and plainly. They signed both the written acceptance of the original proposals, *and the as- [ *300 ] sent to Heath's reassignment. But they stopped before the actu- al reassignment could have been executed, at least with the intended effect; for it undoubtedly required the assent of all the defendant's creditors who had stood in the relation of *cestuis que trust* under the assignment. These had not all executed when the plaintiffs, becoming dissatisfied, struck their names from the consent to the reassignment, with the privity and virtual as- sent of the defendant; for he agreed in writing that they should not be con- sidered bound by their signature. As it regarded himself, he might do that without seal; for the signatures to the reassignment were not yet all obtain- ed; nor was the complement full when the names were actually expunged. Bonnefoux, who held the paper, was then actually in pursuit of signatures. Nothing was ever done after this by way of consummation, either on the side of the plaintiffs or defendant. The debt has not been paid, nor have the composition notes been given or tendered, nor any goods offered to the plaintiffs. In short, both they and the defendant discontinued all thoughts of going on to a discharge of this debt. Could the former have got hold of the original proposals, and the defendant had consented to such an act, they would doubtless have struck their names from them at the same stage of the proceeding. For aught I see, they had a right thus to withdraw, and refuse finally to discharge their large debt on the security offered for only part. To confirm their intention, they made an independent proposition to take certain specified security for fifty per cent. That was declined. On the whole, for reasons satisfactory to themselves, they did, about the time of Heath's re-assignment, manifest as distinct a determination to withdraw themselves from the arrangement, as they had originally shewn to engage in it. This they appear to have done openly, by the consent of the defend-

ant and in the face of the creditors. The design was actually communicated to Bonncfoux and Wheeler, the most efficient agents in prosecuting the business, and the former more deeply interested than any other. The names were struck out in his presence. It certainly did not appear that all the creditors or their agents *were advised of this step on the part of the plaintiffs; nor was it necessary they should be. It was completely in the power of the defendant alone, either by positive concurrence or neglect, to follow up the arrangement, to remit the plaintiffs to their original remedy for the whole debt, if indeed the remedy can be said ever to have been suspended.

[ *301 ]

The cases to which I have before adverted will, I think, be found to contain the enumeration of every possible principle on which the creditor's obligations of forbearance based on these composition arrangements can be said to rest. In sketching what I consider the result of the cases, I have not extenuated those obligations. Looking at them as between the debtor and creditor, they would, as we have seen, depend on nothing but an accord, which, till executed, binds not. Relatively to creditors, the agreement is binding *per se*, provided it be followed up; and the law will insist on its execution in good faith, setting aside all secret terms made by the creditor with the debtor, more favorable to the former than is allowed to the other creditors; and this on the principle of maintaining integrity towards them and humanity to the debtor. *Abbott C. J. in Turner* v. *Hoole, ut supra. Alsager* v. *Spalding,* 4 *Bing. N. C.* 407.

But I have met with no case which denies to the creditor an open withdrawal of his name, with the consent of the debtor, as was practiced here. In saying this, the court labors under the disadvantage of being left to their own unassisted means of research; for not a solitary case or book was cited by either of the learned counsel on the argument. This was wrong, for no doubt the subject is much more familiar in the place of their residence, and where these parties reside, and where the cause was tried, than in any other part of the state. I can only say, I have bestowed on the question what attention and research my time has allowed. After all, the debtor is the man most interested in seeing that the arrangement be carried out. Both he and any one of the creditors have, I think, room at any stage of its progress, for an honest open retraction, such as they mutually stipulated for here, and mutually executed by their positive acts. There is no fraud to redress. Independently of that, *in all the cases I have seen where the creditor was holden to have been bound, he has arbitrarily refused to go on, without the consent of the debtor, after his conduct might be deemed to have drawn in other creditors to execute a deed of composition, and all was arranged, and strict performance finally tendered to him according to the terms which he had proposed. The strongest case is

[ *302 ]

*Bradley* v. *Gregory*, 2 *Campb.* 383, and there the creditor had been zealous and active in causing all the other creditors to sign the deed. He had drawn them in to a course of action by which their rights were affected as well as those of the insolvent, and drew back on the tender being made. Such conduct always works an estoppel *in pais.* Lord Ellenborough held there was in effect, satisfaction as well as accord. In *Steinman* v. *Magnus, id.* 124, 11 *East,* 390, *S. C.,* the composition money had been actually paid. All the cases hold that if the terms of the composition agreement be not exactly followed out by at least a tender of the substituted securities at the very day, the creditor is remitted to his remedy for the whole original debt. True, in *Boothby* v. *Sowden,* 3 *Campb.* 174, Lord Ellenborough, Ch. J. held it lay with the plaintiff to show an infraction; but afterwards, in *Cranley* v. *Hillary,* 2 *Maule & Selw.* 120, the whole court, headed by the same learned chief justice, repudiated that rule, as a general one, saying it was most probably laid down on peculiar circumstances. This has been followed by *Oughton* v. *Trotter,* 2 *Nev. & Man,* 71 ; and see *Ward* v. *Bird,* 5 *Carr. & Payne,* 229. There is no differenee in principle between these latter cases and *Boothby* v. *Sowden.* That went on the *onus probandi,* which clearly, according to all analogy, should lie on the debtor. He is seeking to discharge a larger claim by substituting security for a smaller one in pursuance of a condition precedent which he has stipulated to perform. It was said, in argument, that these plaintiffs could not recover an amount even to the extent of the security proposed to be substituted, because it was, according to the terms of the proposals, to be given only *on* the creditors surrendering their debts. This is taking pretty high ground for
an insolvent debtor, claiming the favor of *being let off on secur-    [ 303 ]
ing only a part. Still it is not deniable, perhaps, that creditors
may, by the terms of the composition, take the burthen of such a condition on their own shoulders; nor is it necessary, in my opinion, for the plaintiffs to deny here that they did do so originally. The fatal answer is, that so far as lay in the defendant's power, he positively discharged them from all obligation, by a writing executed, and never afterwards made any attempt to renew the obligation. That, we have already in part seen, need not have been under seal, though the plaintiffs had signed and sealed a consent to Heath's re-assignment. That assignment was yet *in fieri ;* and completed afterwards. Such a technical question, perhaps, need not be considered; for, after what passed between both parties, no one could suppose that steps would be taken by the plaintiffs or the defendant towards completing the proposals as between themselves. But the basis of the whole was not sealed. The assent to Heath's re-assignment referred to the proposals which were not sealed, and the proposals to that; both were a part of the same general measure, and a mutual agreement to rescind the one, equally affected both, and all

other parts of the machinery. The names of the plaintiffs were, in effect, as completely gone from the proposals as from the instrument with which they were connected. One must necessarily stand or fall with the other; and neither had any existence as between the plaintiffs and defendant, after the names of the plaintiffs were withdrawn, and were not even thought to have existence by either party. So much for the defendant's rights, which were nothing. As before remarked, he had complete power to annihilate whatever rights he had acquired under the proposals, without the consent of the creditors. In the ordinary case we have seen, that his mere neglect, his withholding a tender of the substituted security for one day beyond the time fixed in the condition, remits the creditor; *a fortiori,* where the neglect is agreed upon, and both parties join in releasing each other. This defence can be maintained only on the rights of the *creditors;* as to the *defendant,* there is neither accord no satisfaction. And it were surely a nov-

[ *304 ] el head of defence, *to say that a party shall be protected from the payment of an honest debt whether he will or no. His claim to exemption was, in my opinion, personal to himself throughout. He might waive it, and I think did do so most effectually. On the whole, giving his case the most favorable construction, it came entirely short of a defence, either total or partial.

It follows that the court below erred in awarding a nonsuit. The judgment must be reversed, and a *venire de novo* go from that court; the costs to abide the event.