The Hanover National Bank of the City of New York, Appellant, *v.* Sarah F. Blake, Respondent.

Where a creditor signs a composition agreement, under a secret agreement with the debtor, giving him a preference or some undue advantage over other creditors, this does not, as to such creditor, nullify the composition agreement. The two agreements are to be considered as separate and independent, and, while the secret agreement is fraudulent and void, the composition agreement remains valid and enforcible.

In an action against defendant as indorser of a promissory note, it appeared that by a composition agreement between plaintiff and other creditors and their insolvent debtor, they agreed to take forty per cent of their respective claims and to receive therefor four notes of the debtor, each for ten per cent, two to be indorsed by defendant. She, at plaintiff's request, indorsed all the four notes executed to it. The action was upon one of the notes, which by the composition agreement defendant was to indorse. *Held,* that plaintiff was entitled to recover; that the indorsement of the two notes not covered by the composition agreement was invalid, but this did not invalidate or affect the indorsement of the other two notes made pursuant to that agreement.

*Howden* v. *Haigh* (11 Ad. & Ellis, 1033), disapproved.

*Leicester* v. *Rose* (4 East, 372); *Knight* v. *Hunt* (5 Bing. 432), distinguished.

*It seems,* that while in case of a secret executed agreement giving a preference to one of the creditors signing a composition agreement, the innocent creditors may elect to refuse to be bound by that agreement, if the secret agreement is executory they may not so elect.

*Hanover Nat. Bank* v. *Blake* (66 Hun, 33), reversed.

(Argued March 2, 1894; decided June 5, 1894.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 21, 1892, which affirmed a judgment in favor of defendant entered upon a verdict directed by the court, and also affirmed an order denying a motion for a new trial.

The action is brought by the payee of a promissory note against the indorser. The facts were not in dispute and were stated by the General Term, as follows:

Frederick D. Blake and Charles Waterman were partners engaged in the dry goods business under the firm name of F. D. Blake & Co. They were indebted to various creditors,

including the plaintiff, and, becoming insolvent, executed a general assignment of all their property to James H. Thorp on the 24th day of April, 1888. On the 4th of June, 1888, the creditors of F. D. Blake & Co. signed a composition agreement by which they agreed to take 40 per cent of their respective claims, to be paid by four notes made by the members of the firm, each for 10 per cent of the claim, two payable in six and twelve months, and two in eighteen and twenty-four months, the latter two indorsed by Sarah F. Blake.

The Hanover Bank, desiring to have the security of Mrs. Blake upon all the notes, asked that she indorse the first two as well as the last two, which she did. This was not known to the other creditors and was a security additional to that provided by the terms of the composition agreement.

The note in suit is the *third* of the series, payable in eighteen months, and properly indorsed by Mrs. Blake, in accordance with the composition agreement.

At the trial both parties moved for judgment; which the court directed for the defendant. At the General Term that judgment was affirmed and the plaintiff has again appealed to this court.

*Thomas S. Moore* for appellant. The secret agreement rendered void the indorsement by Mrs. Blake on the first two notes, that being a security additional to the terms of the composition agreement, but, under the facts in this case, the composition agreement is still binding upon the parties to this action, and the notes given in accordance therewith are enforcible. ( *White* v. *Kuntz*, 107 N. Y. 518; *Russell* v. *Rogers*, 10 Wend. 473; *Fellows* v. *Stevens*, 24 id. 294; *Waite* v. *Harper*, 2 Johns. 386; *Yeomans* v. *Chatterton*, 9 id. 295; *Townsend* v. *Newell*, 22 How. Pr. 164; *Gilmour* v. *Thompson*, 49 id. 198; *Lawrence* v. *Clark*, 36 N. Y. 125; *Bliss* v. *Matteson*, 45 id. 22; *Harloe* v. *Foster*, 53 id. 385; *Baxter* v. *Bell*, 86 id. 195; *C. N. Bank* v. *Kohner*, 85 id. 189; *Goldenberg* v. *Hoffman*, 69 id. 322, 327; *Blair* v. *Wait*, Id. 113; *Almon* v. *Hamilton*, 100 id. 527.)

*C. Bainbridge Smith* for respondent. "Where a debtor in embarrassed circumstances enters into an arrangement   \*  \*  \* with his creditors to pay them a composition upon their claims,   \*  \*  \* any private agreement between such debtor and one of the creditors, who professes to join in the general arrangement, that the former, or a third party for him, shall pay a further sum of money, or give a better or further security than such as is provided for the other creditors, is void as a fraud on them.   \*  \*  \* Accordingly, if one creditor do make such stipulation, in fraud of the other creditors, the effect thereof will be to destroy any security which may have been given to him, even for the legal amount of the composition." (Chitty on Cont. [9th Am. ed.] 694; *Leicester* v. *Rose*, 4 East, 372; *Ex parte Sadler*, 15 Ves. 52; *Knight* v. *Hunt*, 5 Bing. 202; *Howden* v. *Haigh*, 11 Ad. & El. 1033; *Higgins* v. *Pitt*, 4 W., H. & G. 312, 323; *Pendlebury* v. *Walker*, 4 Y. & C. 424; *Bradshaw* v. *Bradshaw*, 9 M. & W. 29; *Mallalieu* v. *Mallalieu*, 16 Ad. & El. [N. S.] 689; *In re Hodgson*, 4 DeG. & S. 354; *In re Jarvey*, 36 Week. Rep. 367; *Clark* v. *Ritchey*, 11 Grant Ch. [U. C.] 490, 497; *Doughty* v. *Savage*, 28 Conn. 147; *Moses* v. *Katzenberger*, 1 Handy [Ohio], 46; *Frost* v. *Gage*, 85 Mass. 560; 2 Add. on Cont. 731; Leake on Cont. [3d ed.] 689; Wald's Pollock on Cont. 233; Chitty on Cont. [12th Eng. ed.] 699; Lawson on Cont. § 300.) The judgment should be affirmed. If the rule did not obtain that a secret bargain, by which a creditor exacted from the debtor an additional security, in violation of the terms of the composition, rendered the whole transaction with such creditor fraudulent and void, fraud would be encouraged and dishonesty rewarded. (Story's Eq. Juris. [1st ed.] 379; *Baldwin* v. *Short*, 125 N. Y. 553; *Britten* v. *Hughes*, 5 Bing. 460.)

GRAY, J. In the General Term opinion the question of law was stated thus: "Did the secret agreement, by which Mrs. Blake indorsed the first two notes, invalidate the whole composition agreement, so that notes given in pursuance of

its terms are not enforcible by the plaintiff?" The learned justices, finding no controlling authority in this state, deter-mined the question adversely to the plaintiff and upon the ground, in substance, that, as the agreement was fraudulent, the fraud permeated and vitiated the whole composition agree-ment and disabled the creditor from recovering anything under it. In this view we are not able to agree with them. It may be true that there was no decision in the courts of this state in its features so precisely in point, as to compel adher-ence to its authority and it is true that the view of the Gen-eral Term has support in decisions of English courts. I think, however, that in our state there are expressions of opinion by eminent judges of this court and by a former very distin-guished judge of the Superior Court of the city of New York, which rather commit us to a contrary view, and which should commend themselves to us as furnishing a wise and more politic rule, in these cases of compositions by an insolvent debtor with his creditors. The general principle has been long settled in England and here that a secret agreement, which induces a creditor to agree to a composition by the promise of a preference, or of some undue advantage, over the other creditors, is utterly repugnant to the composition agreement, and, from its fraudulent nature, is avoided by the law. The very essence of a composition agreement is that all creditors come in upon terms of equality; and that equality would be destroyed, if the secret agreement were given effect. In *Leicester* v. *Rose* (4 East, 372 at p. 381), Lord ELLEN-BOROUGH observed that the principle of all the cases was "that where the creditors in general have bargained for an equality of benefit and mutuality of security, it shall not be competent for one of them to secure any partial benefit or security to himself." In *Russell* v. *Rogers* (10 Wend. 474–479) Justice, (afterwards Chief Justice), NELSON said: "So scrupulous are courts in compelling creditors to the observance of good faith towards one another in cases of this kind, that any security taken for an amount beyond the composition agreed upon, or even for that sum, better than that which is common to all, if

unknown to the other creditors, is void and inoperative." It is in the extent of the operation of the principle, which was thus early asserted, that we will find the divergence of judicial opinions between English judges and those of this state. It is curious to observe that though *Leicester* v. *Rose* was relied upon as the basis of authority for their conclusions, the application of the doctrine of that case has been different in each country. *Leicester* v. *Rose* was decided in 1803. Its facts were that several creditors of the insolvent refused to sign, unless collateral security, which was to be given for the first two installments of the composition payment, should also be given for the last two. The defendant agreed to procure this additional security, and, not having done so, the action was brought to enforce his agreement. Lord ELLENBOROUGH stated the question to be, whether any legal effect could be given to such an agreement, which gave to some creditors a better security than to others, and he held that it could not, as it was a fraud upon the rest of the creditors. The case of *Howden* v. *Haigh*, (11 Ad. & Ellis, 1033), was decided in 1840 and was a suit upon composition notes. By a secret agreement between the plaintiff and defendant that the latter should indorse to him a bill, accepted by a third party, in order to give him a preference beyond the other creditors, the former had been induced to sign the composition deed. It was held that he could not recover. Lord DENMAN, relying upon *Leicester* v. *Rose* and *Knight* v. *Hunt*, held that every part of the transaction was avoided by reason of the deceit upon the other creditors. LITTLEDALE, J., while agreeing with him that the fraud extended over the whole, remarked, rather significantly, " it is possible that the plaintiff may be entitled to sue for the original debt." The case of *Knight* v. *Hunt* (5 Bingham, 432), referred to by Lord DENMAN, if we are to regard the language of the opinion, did not expressly decide that the whole transaction was avoided. In that case the plaintiff had refused to accede to a composition of ten shillings in the pound, until a brother of the debtor agreed to supply him with coals to an amount in value equal to half the debt. The coals were fur-

nished; but the notes remained unpaid and the plaintiff brought this suit upon them.   BEST, C. J., stated the principle that the judgment of the creditors is influenced by the supposition that all are to suffer in the same proportion, and briefly concluded with the remark: " Here the plaintiff has had his ten shillings in the pound in coal, and he cannot have it again in money."   In *Mallalieu* v. *Hodgson* (16 Ad. & Ellis [N. S.] 689) decided in 1851, ERLE, J., held that " where any creditor, in fraud of the agreement to accept the composition, stipulates for a preference to himself, his stipulation is altogether void, not only can he take no advantage from it, but he is also to lose the benefit of the composition."   In this ruling he relied upon *Leicester* v. *Rose* and *Howden* v. *Haigh*.   The plaintiff there was seeking to recover for the balance of his original debt, after allowing for the amount of the composition and the value of a preference.   It was his claim that the composition deed had not released the debt to him ; because he had been induced to believe that he alone was preferred, whereas some other creditors had also been secretly preferred.   It will be observed that in *Mallalieu* v. *Hodgson* it was unnecessary to decide whether the plaintiff had lost the benefit of the composition.   The question was whether the plaintiff could defeat the effect of the composition agreement, by the plea that he had been deceived into supposing that he was the only creditor secretly preferred.   As an expression of judicial opinion, it must, however, be accorded its weight as evidencing the continuance of the authority of *Howden* v. *Haigh*.   That case furnishes the sole basis of authority, on which subsequent decisions and text writers have rested the doctrine that the fraud in the secret agreement with the creditor so vitiates the whole transaction of composition, as to disable him from recovering even the amount of the composition.   (Leake on Contracts, 768 ; Chitty on Contracts, 694 ; Wald's Pollock on Contracts, 239.)   I say the sole authority, because *Leicester* v. *Rose* did not go so far as that and *Howden* v. *Haigh* was an extension of the principle, which was supposed to be justified by Lord ELLEN-

borough's decision in the former case. The doctrine of *Howden* v. *Haigh*, it may be observed, did not go wholly unquestioned in England: as may be inferred from the remarks of Littledale, J., in that case, which I have quoted, and of Baron Alderson in *Davidson* v. *M'Gregor* (8 M. & W. at p. 763); who said he was "alarmed at the extent to which that decision goes."

In this state, with the case of *Leicester* v. *Rose* before him, Judge Duer, in *Breck* v. *Cole* (4 Sandf. 79), formed quite a different conclusion, as to the extent of the effect of a secret agreement, which attempts to secure to a creditor an advantage over the other creditors. *Breck* v. *Cole* was an action upon a promissory note; secretly given to the plaintiff, in addition to the composition notes, as an inducement to him to agree to the composition. Judge Duer in his opinion comments upon the fraudulent nature of the agreement, in its effect upon the other creditors; observing that "it is in all cases the concealment of a fact, which it was material for them to know and the knowledge of which might have prevented them from assenting to the composition　　＊　　＊　　＊　　Every composition deed is in its spirit, if not in its terms, an agreement between the creditors themselves, as well as between them and the debtor. It is an agreement that each shall receive the sum, or the security, which the deed stipulates to be paid and given and nothing more; and that, upon this consideration, the debtor shall be wholly discharged from all the debts then owing to the creditors who sign the deed." The learned judge then adverts to the violation of the equality among creditors worked by secretly giving additional security and states this conclusion: "Hence, either the composition deed itself,　＊　＊　＊　or the private agreement, which seeks to evade and, if valid, would defeat it, must be set aside, and sound policy and the principles of good faith require that the latter course should be followed. It is perfectly just that every creditor, who signs a composition deed, should be estopped from setting up any private agreement repugnant to its terms, or inconsistent with its intention and spirit and

\* \* \* every private agreement \* \* \* is of this character and consequently, \* \* \* every security, which is the fruit of such an agreement is illegal and void." He reviews the early decisions in the courts of England and of this state, and concludes that " it is the clear and inevitable result of the decisions that where a composition is made with creditors, every security given to a particular creditor, not provided for in the terms of the deed, and not disclosed, is void as a fraud upon the creditors from whom it is concealed." The importance of this expression of judicial opinion should not, in my judgment, be underestimated. It was delivered by one of the most eminent judges in this state and was concurred in by his associates, Judges MASON and CAMPBELL. It does not appear from the opinion that *Howden* v. *Haigh* was before him; although it had been decided ten years before. But whether his attention was called to it or not, the learned judge's opinion was formed after considering the same early English cases, as were considered by Lord DENMAN in *Howden* v. *Haigh* and by Justice ERLE in *Mallalieu* v. *Hodgson.* Judge DUER limited the effect of the fraudulent secret agreement to the nullification of any rights or advantages attempted to be gained under it and regarded it as something quite separable from the composition agreement itself. From all the early cases in England and in this state the inference from the decisions is, not that the composition agreement is avoided, but, as Justice NELSON stated it in *Russell* v. *Rogers,* "the security taken for an amount beyond the composition agreed upon, or even for that sum, better than that which is common to all, \* \* \* is void and inoperative." So in *Fellows* v. *Stevens* (24 Wend. 294), Justice COWEN held that the law would set aside " all secret terms made by the creditors with the debtor, more favorable to the former than is allowed to the other creditors." It is the secret agreement itself which is fraudulent and void, (*Bliss* v. *Matteson,* 45 N. Y. 22; *Harloe* v. *Foster,* 53 id. 385.) And that is all that I think *Leicester* v. *Rose* decided. *White* v. *Kuntz* (107 N. Y. 518) is one of the latest cases, in

which this court has considered the effect of composition agreements. In that case the plaintiff had signed a composition agreement: by which he agreed with other creditors of the debtors to accept one-third of the indebtedness due them in four notes, to be indorsed by the father of the debtors. To induce the plaintiff to sign this agreement, Kuntz, the father of the debtors, secretly agreed to purchase of him the composition notes within a specified time and to pay $10,000; the composition notes aggregating only about $6,000. This secret agreement Kuntz refused to perform; alleging that it was null and void. Thereupon plaintiff brought an action: alleging these facts in his complaint and, also, that several other creditors had been induced to sign by a secret agreement to pay them a larger percentage than the one-third provided for in the composition agreement and, upon the ground that that agreement was void as to him, demanded its cancellation and that of the notes delivered under it and a judgment against the debtors for the amount of the original indebtedness. Demurrer to the complaint was sustained below and in this court the judgment was sustained. It was held that the agreement between plaintiff and Kuntz, the debtor's father, was fraudulent and could not be enforced and that the composition agreement as to all the innocent parties was avoided. As the plaintiff was not an innocent party; but had, himself, taken a fraudulent advantage, he could not set up the fraud of the creditors. The opinion discusses what were his rights. It was said that he had not forfeited all claims upon his debtors; that " he must have either the composition notes, or his original notes;" that he could not avoid the composition agreement as to himself and enforce his original notes for their full amount, as that would unjustly result in an advantage over the other creditors and " he should be held to the composition." " His only remedy," it was said, " against the defendants is upon the composition notes."

Judge Earl, in delivering the opinion in *White* v. *Kuntz,* cited the English case of *Mallalieu* v. *Hodgson* (*supra*) as an authority in point; but that he did not adopt the opinion

in all its expressions is evident; for he held that there was "no ground upon which he" (the creditor in the case before him) "can be deprived of all remedy."

It is very plain from the opinion in *White* v. *Kuntz* that it is the secret agreement, by which the creditor receives an undue advantage, which is deemed to be avoided. It was so considered, again, by Judge Andrews, in *Meyer* v. *Blair* (109 N. Y. 600); who, referring to *White* v. *Kuntz*, as authority for the statement that a collateral agreement is void in composition cases, which secures to one creditor an advantage over others, said "the court refuses to enforce the secret bargain and confines the creditor, who is a party to the fraud, to a remedy to recover the sum which, by the terms of the composition, he agreed to accept." In *Solinger* v. *Earle* (82 N. Y. 393) the facts were, that a third party had given his note for a portion of the insolvent's debt to the defendants, to induce them to agree to the composition. Having paid the note to a transferee thereof, he brought an action to recover back from the defendants the money so paid. It was held that the action could not be maintained; for, though the transaction was a fraud upon the other creditors, the parties were *in pari delicto*. Judge Andrews, remarking that fair dealing condemned such a transaction, said: "If the defendants here were plaintiffs, seeking to enforce the note, it is clear that they could not recover." Inasmuch as the note sued upon was for an additional amount, beyond the amount of the composition agreement, the remark of the learned judge was in line with all the authorities. He held the secret agreement was void and could not have been enforced. The case is in nowise in conflict with *White* v. *Kuntz*, or *Meyer* v. *Blair*.

If we should say that the fraud of the secret agreement made by the creditor operated to avoid the whole transaction of composition, the result would be to leave him with the original indebtedness unreleased. If the composition agreement, by which the debt was compromised, is to be deemed nullified by the fraudulent transaction, I do not see why the creditor would not be at liberty to pursue the original debt;

a view which Littledale, J., regarded as probable in *Howden* v. *Haigh.*

It would certainly seem to be the logical outcome of the proposition asserted below that, if the composition agreement has been avoided, it has become inoperative as an agreement for any purpose. We assert a wholesome rule and one which works a just result, if we hold that the secret and fraudulent agreement, itself, is illegal and is inoperative to confer any rights or advantages upon the creditor. Perfect equality is to be maintained among the creditors. It was thought below that the secret agreement and the composition agreement constituted but a single and indivisible transaction or agreement. I am not prepared to accede to that proposition; though it has support in some of the English cases referred to. It seems to me the case falls easily within the rule, which permits a severance of the illegal from the legal part of the covenant. (*Pickering* v. *Ilfracombe Rway. Co.*, L. R., 3 C. P., 235, 250; *United States* v. *Bradley*, 10 Peters, 343–360.)

In *Mallan* v. *May* (11 M. & W. 653) the plaintiffs, who were surgeon dentists, agreed to take the defendant as an assistant and to instruct him for a term of years and he agreed at the expiration of that term not to practice his profession "in London or any of the towns in, or places in, England or Scotland, where the plaintiffs might have been practicing." It was held that the covenant as to not practicing in London was valid, and that not to practice elsewhere was illegal; but that the valid part was not affected by the illegality of the other part. Here the agreement with other creditors for a composition was lawful and valid, (unless they should elect to rescind it upon the discovery of the secret agreement, an element not present); but the agreement for, and the giving of, additional security was unlawful and void. Is there any reason why the bad may not be rejected and the good retained? If the alternative is, as it presents itself to my mind, that the composition agreement shall stand as a release of the plaintiff's original demand; or that it shall fall and leave the plaintiff at liberty to recover the original debt, I

am for upholding it and I fail to see why the legal part of the transactions had with it cannot be severed from the illegal part. We should be careful, in our desire to punish the harsh and unscrupulous creditor, who presses his debtor and bargains for an advantage over other creditors, by deprivation of legal rights and remedies, that we do not go too far and lay down a rule which may result unjustly in other ways. It ought not to be possible that through his fraud he may be reinstated in his original position as a creditor for the whole sum due. The operation of a secret agreement is such that the other innocent creditors may, because of the fraud of their debtor, elect to refuse to be bound by their agreement of composition with him. If the secret agreement is executory they may not so elect, and may rely that the creditor, secretly seeking to obtain some promise of advantage over them, will be prevented from enforcing it and from gaining anything by his fraud. Its illegality is a perfect defense in the hands of the promisor. The composition agreement is one thing, as an agreement between all the creditors to release some part of the insolvent's indebtedness to them, upon terms equal as to each; and the secret fraudulent agreement with one or more of them is a stipulation, which, from its inception, was unlawful and which the law annuls. (*Bliss* v. *Matteson,* 45 N. Y. 22.) It was also suggested in the opinion below, in support of the rule there asserted, that if it did not obtain, there would be an inducement to an unscrupulous creditor to commit a fraud; for his only risk would be to lose his additional security, while assured of the amount of his composition. To a certain extent that may be true; but, on the other hand, it may be suggested that, if it were the rule, the insolvent debtor would have the inducement to ensnare his creditors into some secret arrangement and thus, by trick and device, to leave them wholly remediless; disabled to recover the amount of the composition and disabled from pursuing the original debt which the composition agreement released. It seems wiser simply to regard the secret agreement as one which the law avoids for its fraud. The creditor makes it

with the risk of its worthlessness, if repudiated, and the debtor makes it with the peril that its discovery will furnish cause for his other creditors to avoid the composition agreement. The conclusion reached is the result of a careful examination of the authorities and the doctrine they teach and it is in accord with a wiser policy. It must not be forgotten that the defendant's contract of indorsement is within the terms of the composition agreement, with respect to the note in suit. We know nothing of the fate of the earlier notes; the indorsement upon which by defendant was secretly and fraudulently procured to be added. She had a perfect defense to the enforcement of her contract. We are only concerned now with the question of whether the plaintiff shall have the amount of the composition; notwithstanding it may have been agreed secretly that it should have some better security for the payment of some of the composition installments. This question, for the reasons stated, should be answered in the affirmative and, therefore, the judgments below should be reversed and a new trial ordered; with costs to abide the event.

All concur, except ANDREWS, Ch. J., and PECKHAM. J., dissenting.

Judgments reversed.