## STRAUS v. CUNNINGHAM.

(Supreme Court, Appellate Division, First Department. December 31, 1913.)

1. CONTRACTS (§ 76*)—CONSIDERATION—MORAL OBLIGATION.

    Where a creditor has been compelled in involuntary proceedings to accept corporate stock in full settlement of án indebtedness which it does not in fact pay, a moral obligation survives which is a sufficient consideration for a subsequent promise to pay the deficiency; but, where such stock is accepted in voluntary proceedings or compromise, no such obligation survives.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 357–381; Dec. Dig. § 76.*]

2. CONTRACTS (§ 76*)—CONSIDERATION—MORAL OBLIGATION.

    Where, at the time of being released by a creditor upon making a payment in corporate stock which was less in value than his indebtedness, the debtor expressly recognized and reserved a moral obligation to pay notwithstanding such release, such reservation kept alive the obligation after release to the extent that it could furnish a sufficient consideration for a subsequent distinct promise to pay, even though the original settlement was voluntary.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 357–381; Dec. Dig. § 76.*]

Appeal from Special Term, New York County.

Action by Ferdinand Straus against James W. Cunningham. From an order denying plaintiff's motion for judgment on the pleadings and sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Daniel P. Hays, of New York City, for appellant.
Duncan Edwards, of New York City, for respondent.

.SCOTT, J. The question presented by this appeal is: When will a moral obligation survive the release of a debt by a composition agreement so as to furnish a sufficient consideration to support a subsequent promise to pay the debt?

[1] The latest and most comprehensive decision upon this subject in this state is to be found in Taylor v. Hotchkiss, 81 App. Div. 470, 80 N. Y. Supp. 1042, affirmed 179 N. Y. 546, 71 N. E. 1140. In that case Mr. Justice Hiscock, writing for the Appellate Division, stated the general rule as follows:

"If plaintiff, under proceedings in bankruptcy or other involuntary form, had been compelled to accept the stock received by him in full legal settle-

ment of an indebtedness which it did not in fact actually pay, a moral obligation upon the part of the debtor to pay the deficiency would have survived his discharge from his legal and enforceable obligations which would be a sufficient consideration for a subsequent promise to pay such balance. Upon the other hand * * * if plaintiff, without further agreement or provision by voluntary proceedings of compromise, had accepted the stock in question in full settlement and satisfaction of the indebtedness due to him, no moral obligation on the part of the debtor would have survived which would have furnished an adequate consideration for a subsequent promise to pay."

That these two propositions, so far as they go, accurately state the law upon the subject, seems to be conceded and, at all events, is well settled.

[2] There is a third case, however, not precisely covered by either of the foregoing propositions, and that third case is illustrated by Taylor v. Hotchkiss. In that case the firm of H. L. Hotchkiss & Co., being financially embarrassed and unable to pay its debts, made a general assignment. It then sought an adjustment with its creditors and issued a circular letter to them suggesting that they should accept certain stocks and bonds at a valuation of 80 per cent. of their par value, and should thereupon release the firm so that it might resume business on the Stock Exchange. This was accepted and a general release executed. In their circular letter Hotchkiss & Co. said:

"We propose to offer a moral obligation to take those securities back from our creditors at 80 at a date not later than April 1, 1895."

Then followed an explanation as to how the firm proposed to fulfill this moral obligation. Of course, this proposition was intended to, and doubtless did, have an influence in inducing the creditors to execute the composition agreement, although of itself it did not amount to a binding agreement to take the stock back. The court, however, found that after the execution of the release Hotchkiss renewed by independent agreements his obligation to retake the stock at 80. The question was whether a moral obligation arose out of the composition agreement sufficient to serve as a consideration for the new promise. The court held that it did, notwithstanding the composition and release were voluntary acts on the part of the creditors. The court was of the opinion that, even in case of a voluntary composition, the debtors may, by their acts, expressly provide for that survival of the moral obligation to pay, in the future, in full the indebtedness compromised which would serve as a sufficient consideration for a new promise.

This seems to be a reasonable rule in view of the wide power which individuals have to contract as between themselves. Nor is it necessary that the reservation of this moral obligation be so closely interwoven with the composition agreement as it was in Taylor v. Hotchkiss. We see no reason why a debtor may not, at the time he accepts a voluntary extinguishment of his debts, expressly reserve a moral obligation to pay in full, if able, which will support a subsequent promise to pay.

The facts alleged in the complaint in the present case, which for the purpose of this appeal must be taken as true, are that in March, 1905, the firm of Ellingwood & Cunningham owed the plaintiff the sum of $27,000; that said firm entered into a composition agreement with

certain of their creditors wherein and whereby said creditors for certain consideration therein expressed agreed to release said firm and the members thereof from all their legal obligation to pay the debts and obligations due to said creditors; that plaintiff signed said agreement and became a party thereto. The complaint then proceeds as follows:

"IV. That prior to and simultaneously with the making of the said agreement, the defendant expressly reserved from the operation of the said agreement and release his moral obligation to pay the debt of the plaintiff, amounting, as aforesaid, to the sum of $27,000 and interest, and duly acknowledged and recognized said moral obligation as then existing and continuing to exist thereafter.

"V. That thereafter and on or about the 19th day of April, 1905, the defendant recognizing his said moral obligation to pay to the plaintiff the said debt of $27,000, and in consideration thereof, did then and there promise that he would pay to the plaintiff the said sum of $27,000 with interest from April 19, 1905, as follows: $8,000 on or about May 22, 1906, and the balance within a year thereafter, the said defendant, however, to be credited on account of said payment with all sums which the plaintiff might receive from the trustees or assignees under said composition agreement.

"VI. That thereafter, from time to time, the defendant made payments upon account of the said sum agreed to be paid by him, as aforesaid, in the amounts and at the times set forth in the annexed schedule, which is marked schedule 'A' and made part thereof as though the same were herein specifically set forth in full, and the plaintiff received various sums from the trustees or assignees under said composition agreement at the times and in the amounts set forth in said schedule 'A.' "

It is also alleged that from time to time plaintiff sent to defendant statements of account which were received and accepted by defendant. Attached to the complaint is a schedule showing the payment of several thousand dollars by defendant to plaintiff between June 1, 1905 and January 20, 1908.

Those allegations, as it seems to us, bring the present case fairly within the principle of Taylor v. Hotchkiss.

It was certainly competent for the defendant to reserve a moral obligation to pay his debt in full, if possible, and perhaps most honorable men would feel that such an obligation rested upon them. It may well be, although not so alleged, that the defendant's recognition and reservation of this moral obligation had weight with the creditors in consenting to compromise and release the debts.

The rule is we think satisfied by holding that, unless specially reserved, no moral obligation to pay the debts survives a voluntary composition and release, but that where at the time of the release the debtor expressly recognizes and reserves a moral obligation to pay notwithstanding the release, that express reservation keeps alive the obligation after release to the extent that it will furnish a sufficient consideration for a subsequent and quite distinct promise to pay. It is entirely optional with a debtor, under such circumstances, whether or not he will reserve a moral obligation, and if he elects to do so we can see no rule of law which is violated by holding that that reservation will support a subsequent promise to pay.

The appellant devotes no small space in his brief to demonstrating that it does not appear on the face of the complaint that the alleged reservation was a fraud upon other creditors. It is quite clear that it

does not so appear, and the respondent expressly disclaims making any such contention, admitting in express terms, as is the undoubted fact, that on the face of the complaint no preference is shown to have been obtained by the plaintiff over any other creditor.

The order appealed from must therefore be reversed, with $10 costs and disbursements, and plaintiffs' motion for judgment on the pleadings granted, with $10 costs, with leave to the defendant to withdraw his demurrer and answer over within 20 days upon payment of all costs of the action.

CLARKE, DOWLING, and HOTCHKISS, JJ., concur.

INGRAHAM, P. J.   I understand the law in this state to be well settled that the discharge of an indebtedness based upon a composition between a debtor and his creditors generally, the discharge having been voluntary, leaves no moral obligation on the part of the debtor sufficient to support a subsequent promise of payment of the balance. Stafford v. Bacon, 1 Hill, 532, 37 Am. Dec. 366; Zoebisch v. Von Minden, 47 Hun, 213; Id., 120 N. Y. 406, 24 N. E. 795. See, also, note in 53 L. R. A. 363. There is therefore no consideration for this promise alleged, unless the agreement between the plaintiff and defendant, that prior and simultaneously with the making of the composition agreement the defendant expressly reserved from the operation of the agreement a release of his moral obligation to pay the debt of the plaintiff and duly acknowledged and recognized said moral obligation as then existing and continuing to exist thereafter, amounts to an allegation of consideration.

It was held, in Taylor v. Hotchkiss, 81 App. Div. 470, 80 N. Y. Supp. 1042, affirmed 179 N. Y. 546, 71 N. E. 1140, that where a debtor wrote to all of his creditors a proposal to accept certain securities from the debtor in full satisfaction of his indebtedness, and as part of the proposal stated to his creditors, "We propose to offer our moral obligation to take those securities back from our creditors at 80 per cent. at a date not later than April 1, 1895," such a moral obligation, recognized by the debtor, was a sufficient consideration for a subsequent agreement to take from the creditors the securities at 80 per cent. of their par value.   And this case is an authority for holding that where a debtor proposed a settlement with all his creditors, which reserved the moral obligation to pay the debt, such moral obligation would be a sufficient consideration for a new promise subsequently made to pay; but it did not decide, as I understand it, that a debtor could make a composition with all of his creditors which, as to all but one, was absolute, while as to the one a secret moral obligation to repay the balance of the debt was reserved.   If the reservation of such a moral obligation would furnish a consideration for a new promise, that was a distinct advantage which the favored creditor retained over the other creditors whose debts were absolutely discharged; and such a secret advantage to one creditor over the others is what the courts have always held invalidated the agreement as to the other creditors. See Hanover Nat. Bank v. Blake, 142 N. Y. 404, 37 N. E. 519, 27 L. R. A. 33, 40 Am. St. Rep. 607.

It is claimed, however, that the complaint does not show that this reservation of a moral obligation to pay the balance of the debt was not made with all the creditors, and was therefore a preference obtained by one creditor over the others. For this reason, I concur with Mr. Justice SCOTT in the reversal of this order.