EMMA DEAN BURK and Another, Plaintiffs, *v.* DAVID S. WRIGHT and Another, Defendants.

Supreme Court, Chautauqua County, September 18, 1928.

Assignments for benefit of creditors — contract for sale of assets by assignee — consideration — validity — action on contract whereby defendants agreed to share with plaintiffs profits made in sale of assets purchased by defendants from assignee of debtor — plaintiffs and defendants were creditors — evidence shows consideration — contract not invalid as constituting secret preference — items of accounting considered.

The defendants were creditors of a man who had made an assignment for the benefit of creditors and they purchased from the assignee the assets at a price agreed to by the assignee and the other creditors, and thereafter they entered into the contract in question with the plaintiffs who were also creditors, whereby the plaintiffs were to share in any profits made upon the resale of the assets. The debtor furnished a small part of the amount paid for the assets.

There was a good consideration furnished by the plaintiffs for the contract in the way of services in helping the defendants to secure a purchaser of the assets and in giving advice and drafting legal documents, even though the plaintiffs did not invest any money in the enterprise.

The contract was not against public policy on the ground that the plaintiffs and the defendants, who were creditors, were by the contract to secure a secret

preference over other creditors, for it appears that the defendants purchased the assets with the full knowledge and consent of all the creditors and at a price greater than any one else offered, and the mere fact that the debtor borrowed money and paid a part of the consideration, does not affect the validity of the contract, for all of the money paid for the assets was equitably distributed among all the creditors.

Therefore, the plaintiffs are entitled to an accounting as to the profits realized by the defendants upon the resale of the assets.

The defendants should not be charged with $29,000 fire loss on the theory that they turned off the electric current which operated the water sprinkler system and thereby invalidated the insurance contract, for it appears that the insurance company did settle for one-half the amount of the policy and that the defendants conducted the property as prudent men. The electric current was turned off to prevent petty thieving of the assets, which consisted of grape wine, and at the time the defendants did not know that the same current operated the water sprinkler system.

The proof is insufficient to enable the court to pass upon the question regarding compound interest payable to the defendants. That question must be determined on an accounting by the referee.

The defendants, in view of the fact that they resisted an accounting and in view of the fact that the contract does not call for compensation to them, should not receive compensation for their services.

ACTION for an accounting of the profits made upon the purchase and sale of assets which had been assigned for the benefit of creditors.

*Glenn W. Woodin,* for the plaintiffs.

*Nugent & Heffernan,* for the defendants.

CROSBY, J. This is an action for an accounting of the profits made upon the purchase and sale of the assets of Conrad Green which had been assigned by Green to the Marine Bank of Buffalo for the benefit of creditors, and purchased from said assignee by the defendants, and afterwards sold by defendants, apparently at a profit. The plaintiffs claim a share of said profits by reason of a contract made by defendants with them, dated December 16, 1921. Defendants claim that there was no consideration to support their promise to divide profits with the plaintiffs, and, furthermore, that the contract upon which plaintiffs rely was part of an illegal scheme by which plaintiffs, as well as defendants, sought, by secret means, to obtain a preference over other creditors of Green. These two defenses, (1) lack of consideration for the contract, and (2) illegality of the contract, present the main issues to be decided. If it is held that neither of these two defenses is good, then an accounting must be had, and there will be four other issues to decide, viz.: (a) Should defendants be charged with a $29,000 loss by fire because defendants had failed to keep the assets properly insured? (b) Have the defendants taken compound interest with the amount of which their accounts should be

surcharged? (c) Should defendants have compensation for their personal services in handling the assets purchased from Green's assignee? and (d) What are the respective amounts of the claims of the two plaintiffs and of the defendants (representing the George Wright estate) against Conrad Green?

The determination of this last question (d) will determine the proportion in which the profits, if any, from the purchase and sale of the Green assets are to be divided among plaintiff Burk, plaintiff trust company and the George Wright estate.

The facts are, substantially, as follows: The various business enterprises owned and controlled by Green became financially embarrassed. Green and those associated in interest with him made the assignment to the Marine Bank for the benefit of creditors. Each of the plaintiffs was a creditor and the George Wright estate was a creditor. Defendants are executors and residuary legatees under George 'Wright's will. David Wright purchased all the assets from the assignee, but his codefendant, Reuben Wright, was jointly interested in the purchase, and furnished half the money for the purchase, and had at all times knowledge of all matters pertaining to the transactions heretofore or hereafter considered, even though his brother David did not give him any written acknowledgment of his interest until some time after the purchase of the Green assets by David. For the purposes of this case, therefore, we may speak of the two defendants as having made the purchase of the Green assets, and also as having made the contract with the plaintiffs for division of profits, if any, to be made from selling said assets.

Defendants' motive in buying the assets was, of course, to make a profit in order to recoup a part or all of their loss on the claim which the George Wright estate had against Green. But, early in the negotiations for the purchase of the assets, Green expressed a desire to get all the assets back into his own hands. Defendants offered $100,000 for the assets; the assignee conferred with a creditor's committee having authority to represent all the creditors; the creditors agreed to accept the offer of defendants provided the offer was raised enough so as to pay all creditors fifteen per cent of their claims as allowed. Defendants then made the offer large enough to pay all creditors the fifteen per cent, but, of the required amount (something over $100,000), Green borrowed of a friend, and put in, $5,000, in consideration of which defendants made a contract with Green to sell the assets to him for an amount equal to what defendants paid for the assets, plus the aggregate claims of the Wright estate and of the two plaintiffs. Green did not make good on the payments, and ultimately defendants had to

manage the assets, sell them off from time to time, and make what they could. In the price to Green the Wright claim was exaggerated beyond its just amount.

Defendants' successful bid for the property was dated November thirtieth; it was accepted by the assignee, with authority from the creditors, on December fifth, and on December sixteenth the contract was made which is the basis of this suit.

We now take up the issues to be decided, in the order hereinbefore set forth:

(1) Was there a consideration for the contract of December sixteenth? It recites a consideration, namely, that of the plaintiffs' aid in helping to secure the purchase of the Green assets. Furthermore, the president of plaintiff trust company and the son-in-law and agent of plaintiff Burk both rendered considerable aid in helping to manage and sell the assets. The trust company's president particularly, being a lawyer, gave legal advice, drew many documents and conferred with defendants almost daily about the handling of the matters in which they were jointly interested. Defendants rendered to the president of the trust company many accounts showing progress in disposing of the assets. Of course, neither of the plaintiffs put one cent into the purchase price, nor agreed to. They took no risk of loss. But the parties evidently did not much fear a loss, as the assets had an inventory value of three times the purchase price, and concededly, defendants have a genius for handling matters of the kind undertaken here. While plaintiffs neither paid nor risked any money in the enterprise, I am satisfied that each furnished a substantial consideration for the contract by which defendants agreed to divide profits with them.

(2) Was the contract against public policy, and illegal and void? The defendants say it was illegal because it was a secret agreement aimed at a preference to plaintiffs. Secrecy and preference are the two things that, when combined, make contracts of this kind illegal. It is not illegal secretly to seek to treat everybody fairly and equitably; it is not illegal openly to take a preference where all parties in interest consent that it be done, knowing all the facts. But when a composition with creditors is being worked out the law treats the matter as though the creditors were dealing with each other as well as with the bankrupt, or his trustee; and if any creditor makes any agreement either with the bankrupt, with the trustee or with one or more other creditors, that is kept secret from other creditors, and that gives him a preference over other creditors, such as better security or a larger percentage of his claim, then the law condemns, as illegal and void, so much

of the agreement as tends to work the preference. The composition agreement, in so far as it is fair and equitable, is not void, even as to the party who sought to gain the preference. For instance, if a bankrupt compromises with his creditors by paying them each fifty per cent of their claims; and, in order to induce one creditor, A, to join in the plan, secretly agrees to give him an additional twenty-five per cent, A can still have his fifty per cent even though the agreement for the additional twenty-five per cent is held illegal and void. That is the rule in this country though not in England. The reason for the rule is that the law does not wish to offer to the compounding bankrupt a means of avoiding the payment of the just and equitable amount agreed to be paid by appealing to the greed of some creditors by offering them a preference. The rules of law above set forth are well stated in such cases as the following: *Hanover National Bank* v. *Blake* (142 N. Y. 404); *White* v. *Kuntz* (107 id. 518); *Solinger* v. *Earle* (82 id. 393); *Klaw* v. *Famous Players Lasky-Corp.* (207 App. Div. 211); *Nole* v. *Abate* (190 id. 705). Having these rules in mind, was the contract of December sixteenth, between defendants and plaintiffs, a secret agreement aimed at a preference? It must be admitted that it was secret in the sense that it was not disclosed to the trustee nor to other creditors. But I cannot see how it was even aimed at getting a preference. Had the $5,000 which Green put into the purchase been given to plaintiffs instead of going into the general fund and distributed *pro rata* to all the creditors, that would have constituted an illegal preference. But every cent that was paid for this property, no matter from what source it came, was distributed equitably among all creditors. Where is there any preference? What did plaintiffs and defendants get more than any other creditor? The only claim is that they got the assets, for which they paid more than any one else would pay; for which they paid an amount which the trustee and all the creditors were satisfied to accept and did accept; and they got the opportunity to make a profit if they could in managing and disposing of the assets. I do not regard this as a preference within any fair interpretation of the term. It certainly cannot be the policy of the law to make it illegal for the creditors themselves to bid at a bankrupt sale. They are the ones most likely to bid the property up to what it is worth. The highest bidder gets no preference. And if not, other creditors, who, though secretly, afterward buy their entrance into his bargain, get no preference. If there were a preference here then the defendants, though parties to the illegal scheme, would not be precluded from claiming the court's protection against any suit based upon the illegal contract. This is not because the court is tender toward

the defendants, but because the court will not lend its aid in furtherance of any illegal bargain. But I apprehend this also to be true; that an equity court will not strain unduly to discern illegality, where none is apparent, at the behest of parties who base their defense upon alleged illegal schemes to which they were themselves privy.

The defendants bought the assets openly; every creditor received his *pro rata* share of the purchase price. Afterwards defendants for a consideration satisfactory to them let plaintiffs into their expectation of profits on their bargain. That plaintiffs and defendants did not disclose the latter arrangement is no offense to honesty in business practice, so long as the only advantage they could gain over other creditors would be the fruit of their own industry and skillful management of their business. They might have lost. Their gain, if any, was and could be at nobody's expense.

Plaintiffs should have a judgment for an accounting.

This brings us to the four questions last set forth above.

(a) Defendants should not be charged with the $29,000 fire loss. One of the buildings was insured for $58,000. The efficiency of the water sprinkler system depended upon the electric current which ran through the same meter that furnished current for lights. This building was filled with grape wine which then recent legislation had rendered a dubious asset. Defendants discovered that the electric lights facilitated raids upon the plant by petty thieves bent upon drinking up the assets. Not knowing of the necessity of the electric current to the efficiency of the sprinkler system, defendants had it turned off. There was a condition in the insurance policy that the same became void unless the sprinkler system was kept working. Finally a compromise was reached by which one-half the amount of the policy was paid. Plaintiffs are altogether too harsh in their demands in asking that defendants bear all this loss. Defendants are exceptionally shrewd business men. They had more at stake than anybody else. They handled this property as they handled their own. They acted in good faith in this particular matter. They acted as prudent men would act in the management of their own property.

(b) Insufficient proof was taken to enable the court to decide the question regarding compound interest. An accountant, witness for the plaintiff, testified that the accounts submitted, from time to time, by defendants disclose a considerable amount of compound interest charged in the account. As there is to be an accounting before a referee, that matter is left for the referee to try, and upon his report a decision will be made upon the coming in of such report.

(c) The defendants should have no compensation for their services in handling the assets purchased of the Green estate. When the parties made their contract of December sixteenth they evidently did not anticipate that any compensation would be paid, and none was provided for in the contract. The refusal of defendants to account to plaintiffs, and their attempted repudiation of their written agreement, should deprive them of compensation.

(d) It is left to the referee to be appointed herein to report his conclusions upon the amounts of the respective claims of the plaintiffs and of the George Wright estate.

Let a decision be prepared in accordance with the conclusions herein stated, and in accordance with the court's rulings upon requests to find made by the respective sides and be presented for signature, and let judgment be entered accordingly, with costs in favor of plaintiffs against defendants.