MARC KLAW and Another, Appellants, Respondents, *v.* FAMOUS PLAYERS-LASKY CORPORATION and Another, Defendants, Impleaded with BANKERS TRUST COMPANY, as Executor, etc., of ALF HAYMAN, Deceased, Respondent, Appellant.

First Department, November 30, 1923.

Contracts — validity — plaintiffs and other creditors entered into compromise of their claims against estate — corporation was organized and creditors agreed to take stock — plaintiffs entered into secret agreement with another creditor whereby they were to receive one-half of other creditor's stock in addition to stipulated amount under compromise — last agreement is invalid and unenforcible in equity.

A secret agreement entered into by the plaintiffs and another creditor of an estate is invalid and unenforcible in equity, where it appears that all of the creditors of the estate and the heirs and next of kin entered into a compromise agreement under which a corporation was to be organized, the assets of the estate to be transferred to the corporation and the creditors and next of kin to receive stock in the corporation; and that the plaintiffs exacted from another creditor, without

the knowledge or consent of any other party to the compromise agreement, the agreement in question by which the other creditor agreed to transfer to the plaintiffs fifty per cent of the stock which he was to receive in the corporation.

CROSS-APPEALS by the plaintiffs, Marc Klaw and another, and by the defendant, Bankers Trust Company, as executor, etc., from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 11th day of April, 1922, upon the decision of the court rendered after a trial at the New York Special Term.

*Nathan D. Stern* and *Mortimer Fishel* [*Nathan D. Stern* of counsel; *I. M. Dittenhoefer* with him on the brief], for the plaintiffs.

*Hornblower, Miller & Garrison* [*Lindley M. Garrison* of counsel; *Charles A. Boston* with him on the brief], for the defendant Bankers Trust Company, as executor.

McAVOY, J.:

The Bankers Trust Company, as executor under the will of Alf Hayman, deceased (hereinafter called the defendant), appeals from a judgment awarding to the plaintiffs one thousand two hundred and fifty shares of Famous Players-Lasky Corporation stock with an allowance against these shares of seventy-five shares for attorneys' services and fifty shares which were set apart as an indemnity for the Famous Players-Lasky Corporation for the discharge of certain claims.

Plaintiffs appeal from the judgment in so far as it allows defendant Famous Players-Lasky Corporation to hold and retain fifty shares of the stock awarded to plaintiffs as an indemnity against any liability that may be established by two creditors who assert claims; and *secondly*, from so much of the judgment as charges against the plaintiffs' shares seventy-five shares which the judgment directs to be delivered to attorneys who claim compensation for certain services which were rendered; and *thirdly*, from a denial of delivery to the plaintiffs of the entire one thousand two hundred and fifty shares of capital stock of the Famous Players-Lasky Corporation, which are the subject of the controversy. The defendant's resistance to plaintiffs' claim is founded upon the proof that in the settlement of the estate of Charles Frohman, deceased, the plaintiffs exacted a secret advantage for signing the creditors' agreement which was then entered into with all of Frohman's creditors; and it urges that equity should not aid them in enforcing it. After Frohman died, his affairs indicated that immediately to wind up his estate would result in depriving his next of kin of any interest in his fortune. It was doubted whether anything more than payment of creditors could be accom-

plished by carrying out a legal administration of his estate. Negotiations were, therefore, instituted with the creditors for maintaining and continuing the business as a going concern, preserving the value of its assets and good will by the appointment of administrators who would represent the creditors and the family; and a plan was laid out whereby a corporation was to be formed to take over the various theatrical enterprises which were on the road, and carrying on performances, and such other assets of the intestate as were discoverable, which corporation would issue its stock divided into preferred stock, which was to go to unsecured creditors, and common stock, one-half of which should go to the next of kin, and the other half to one Alf Hayman, defendant's testator and formerly Frohman's general manager, in consideration of his connection with the enterprise and the value of his services and other good considerations. This plan resulted in an agreement which was accepted by the heirs and next of kin and all of the creditors of Charles Frohman, including the plaintiffs and Alf Hayman, who was himself a creditor, and was embodied in a writing, signed and delivered by all the parties during the months of June and July, 1915. Plaintiffs executed this agreement on June 23, 1915, and the corporation which was formed to carry out the provisions of the contract was called Charles Frohman, Inc.; and all the assets of Charles Frohman, consisting of his various theatrical enterprises, were transferred to the new company. Before plaintiffs would enter into this agreement, however, they exacted from Alf Hayman, without the knowledge or consent of any other party, a writing, which recited in terms the following: " In consideration of the execution by you of the agreement of June    , 1915, relating to the assets of the late Charles Frohman, and your claim against the said Charles Frohman, and in consideration of the prospective value to the new corporation of your co-operation, it is understood and agreed that I shall and will deliver to you, and do hereby assign and transfer to you fifty (50%) per cent. or one-half in par value and amount of any and all common stock of the corporation to be formed, as specified in the said agreement, which I am entitled to, or may at any time receive, under or pursuant to the said agreement; the same to be delivered by me to you when and as received by me."

It is this instrument upon which plaintiffs base their claims in this action, and it is because of the secret nature of the negotiations for this agreement and its withholding from all the other creditors that defendant claims a fraud was practiced upon the other parties to the agreement, and that no equitable ground of relief can be maintained under such considerations.

The organization meeting of the newly formed corporation was attended by one of the plaintiffs in their behalf, and the affairs of that meeting were participated in by him. It was there announced that the authorized preferred stock, as issued according to the plan, represented an unsecured indebtedness from Charles Frohman to plaintiffs of $129,000; and a certificate for this amount was drawn in plaintiffs' name for delivery to them, pursuant to the agreement which had been entered into by all of the creditors. Plaintiffs' representative, Klaw, made no objection then to the plan and agreement, nor acquainted any of the corporate officers or the members of the new corporation who were Frohman's creditors with this arrangement which he had with Hayman to receive one-half of the shares of common stock which the agreement provided Hayman and the next of kin alone were to receive. The agreement with the creditors, heirs at law and next of kin, and the plan outlined therein were fully performed by all the parties; but plaintiffs thereafter refused a tender of a certificate for 1,390 shares (erroneously drawn for 1,390 shares instead of 1,290 shares) pursuant to the plan, claiming that they held collateral which they were entitled to apply to the entire debt of Charles Frohman, and that until the collateral was liquidated, the amount of the preferred stock to which they were to be entitled could not be ascertained. Fifteen hundred shares of the common stock were issued to Alf Hayman, as provided for in the plan in July, 1915, and thereafter placed in a voting trust and certificate therefor issued to Hayman in lieu of them; but no demand was ever made by plaintiffs on Alf Hayman, nor was there any claim asserted against the Frohman corporation for any of said shares of common stock or the voting trust certificates representing them until July, 1919. This demand by plaintiffs was nearly coincident with the sale of the stock in June, 1919, by Alf Hayman to the defendant Famous Players-Lasky Corporation. The sale by Hayman to that company comprised the whole 1,500 shares of common stock which had been issued to Hayman, and, of course, included the 750 shares which plaintiffs claim equitably belonged to them by reason of the agreement recited above. The basis of the sale was an exchange of Famous Players stock for Frohman, Inc., stock on a basis of one and two-thirds of the Famous Players for one share of the Frohman, Inc., issue.

In carrying out the provisions of the agreement for the sale of the stock, deposits were made for the purposes of this exchange with the defendant Empire Trust Company; and after making certain exchanges under the contract of sale, that company still holds 1,250 shares of the Famous Players stock, and 100 shares are still

retained by the Famous Players-Lasky Corporation, which are held as security or indemnity for pending suits. Upon discovery of this agreement for the exchange of stock, plaintiffs made demand for 1,250 shares of Famous Players stock, without offering to contribute to any of Hayman's expenses in the carrying out of the exchange. They then gave notice that they elected to ratify the agreement for the sale of this stock, which agreement contained a listing of the plaintiffs as creditors of Charles Frohman, Inc., upon notes of over $68,000 in amount, and showed no other liabilities to plaintiffs. There did appear, however, in the list of preferred stock outstanding of the original $500,000, the $129,000 authorized to be issued to plaintiffs under the plan, but which, as above indicated, plaintiffs had refused to receive. Thereafter plaintiffs gave notice of their intention to sell all the collateral which they claimed to hold for a debt of Charles Frohman, amounting to about $131,000, notwithstanding their ratification of the sale with its representation of their status as creditors. To prevent this sale (and under protest), Charles Frohman, Inc., paid to plaintiffs $131,004.70, and took all the shares of stock which the plaintiffs had held as collateral for their debt, although protesting that nothing excepting the $68,000 in promissory notes, with interest thereon, was entitled to the benefit of the collateral. Alf Hayman thereafter died, and the Bankers Trust Company was appointed his executor and is now acting as such.

We conclude that a mere recital of these facts indicates that the conclusions of the learned Special Term that the plaintiffs did not receive any secret advantage for their execution of the agreement with the heirs and creditors of Charles Frohman, and that the plaintiffs have duly performed their part of that agreement, and that they were equitably the owners of 750 shares of common stock of Charles Frohman, Inc., which came to them from this agreement with Alf Hayman for a division of his share of the common stock of Charles Frohman, Inc., which stock is directed to be delivered to the plaintiffs with dividends, are wholly unsound and contrary to law. The equitable principle that one who exacts a secret advantage in consideration of executing an agreement with fellow-creditors will not be heard in a claim for its enforcement, cannot be whittled away by an assertion that no one was injured who was entitled to complain, or that the creditor benefited by the secret agreement belongs to a different class from that of other creditors. Unless the class distinction of such a creditor is disclosed to the other creditors and assented to by them in the agreement wherein they are joined as equals, he may not assert it thereafter. The vice of the agreement is its secret lack of equality.

Of course, a lack of equality in the distribution of stock or of recoverable assets may be agreed upon, but it must be disclosed, or else, no matter what the reason of failure to disclose it to the others, a suit upon such an agreement cannot be maintained in an equity court under the doctrine adverted to above, which has been firmly adhered to throughout its legal history. This principle is well expressed in the opinion in the case of *White* v. *Kuntz* (107 N. Y. 518) where the court said: " ' Every composition deed   *   *   * is in its spirit, if not in its terms, an agreement between the creditors themselves, as well as between them and the debtor. It is an agreement that each shall receive the sum or the security which the deed stipulates to be paid and given and nothing more; and that, upon this consideration, the debtor shall be wholly discharged from all the debts then owing to the creditors who sign the deed.' "

If any other rule were adopted, the basic doctrine could easily be subverted where a creditors' agreement itself creates a preference by providing for two classes of creditors, one class receiving security and the other to which is given unsecured obligations. Those unsecured may then make arrangements, disregarding each other's solemn promise to equally enforce their unsecured claims, with such secured creditors as will give them a part of their security from the estate for the accommodation and advantage to the secured creditors of procuring the signature of the ones favored. In other words, a preferred creditor may share with a common creditor in a creditors' agreement such preference as he gets without disclosing it, and a common creditor may enforce it if he can show thereafter that he ought to have been a preferred creditor by reason of his assistance to the debtor during his business career.  This illustration demonstrates the fallacy of the reasoning which would permit an agreement founded in *uberrima fides* thus to be thwarted.

In the case of *Almon* v. *Hamilton* (100 N. Y. 527) a brief exposition of the moral principle underlying these agreements is set out as follows: " The law exacts of all the parties to a composition the most scrupulous good faith. It enforces a wholesome morality and inculcates the principles of honest and fair dealing, by defeating any advantage attempted to be gained, either by working upon the necessities of the debtor or by colluding with him.   *   *   *. The doctrine is based upon public policy, and the principles of commercial honor, and we should be very unwilling to weaken it by nice distinctions."

The rule against enforcing agreements conceived in secrecy and concealment is not founded upon a necessary showing that the other creditors are deprived of something which otherwise they would have received, but upon the principle that every one concerned as

participant in the agreement should be entitled to assume that no one will secretly receive better results than are granted with the concurrence of all. The measure of propriety is disclosure, and not the comparative injury from non-disclosure. It is not necessary that the creditors' fund be diminished in order to invalidate the secret agreement. (*Breck* v. *Cole,* 4 Sandf. 79.)

A concealed agreement for such advantage is utterly repugnant to the letter and the spirit of the creditors' agreement, is fraudulent in its nature and is " avoided by the law." (*Hanover National Bank* v. *Blake,* 142 N. Y. 404.)

The judgment should be reversed, with costs to defendants, and judgment directed for the defendants, with costs.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Judgment reversed, with costs, and judgment directed for the defendants, with costs. Settle order on notice.