EMMA DEAN BURK and Another, Respondents, Appellants, v. DAVID S. WRIGHT and Another, Appellants, Respondents.

Fourth Department, June 5, 1929.

*Glenn W. Woodin*, for the plaintiffs.

*Thomas P. Heffernan*, for the defendants.

SEARS, P. J. Plaintiffs' cause of action has its foundation in a written communication signed by the defendant David S. Wright and addressed to the plaintiff Dunkirk Trust Company which is as follows:

" *December* 16, 1921.

" DUNKIRK TRUST COMPANY,
" Dunkirk, N. Y.

" GENTLEMEN.— In consideration of your approval and consent to the proposition this day made by us for the purchase of all property and assets of every description, belonging to Brocton Fruit Products Company, Brocton Fruit Beverage Company, Harvard Vineyards, Inc., Conrad W. Green and Charlotte I. Green, his wife, in the hands of City Trust Company Branch, Marine Trust Company of Buffalo, as Trustee, for the benefit of creditors, for the sum of $104,500.00 in cash, and also in consideration of your services and assistance in bringing about said sale, and with relation to the consummation of the transaction involved, we do hereby specifically agree:

" That as soon as we have realized from said assets and there has been returned to us the sum of $104,500.00 and interest, paid therefor, that then the assets and property so purchased shall be considered, regarded and treated as between you and the undersigned, and the other parties interested, as subject to liens of equal priority for the unpaid indebtedness owing the Geo. W. Wright Estate, by said Green and the interests above named, to an amount not exceeding $80,000.00 and unpaid similar indebtedness owing from the same sources to Dunkirk Trust Company, not exceeding $14,000.00, and Mrs. Emma Dean or the Ross Dean Estate, as the case may be, not exceeding $8,000.00, as though and to the same extent as if a mortgage was placed and recorded covering all of said assets and property as security for the payment of said indebtedness, and that after the payment to us of the $104,500.00, and interest, about to be paid for said assets and property, we will proceed with due diligence to liquidate and obtain from the remaining assets sufficient funds to meet the three debts last referred to, and that all sums paid thereon and applicable thereto will be upon a pro-rata basis.                    Yours truly,
                              " D. S. WRIGHT."

The receipt of this communication was acknowledged by the trust company on the same date and the plan stated in it was then approved and agreed to by the plaintiff trust company.

Early in the year 1921 certain corporations doing business in

Chautauqua county known as the Brocton Fruit Products Company, the Brocton Fruit Beverage Company, and the Harvard Vineyards, Inc., became financially embarrassed. Conrad W. Green was the controlling factor in these several corporations and he was also personally in financial difficulties. The three corporations and Conrad W. Green and his wife may be treated as a unit in the consideration of this case. On May 13, 1921, the corporations and Conrad W. Green and his wife executed a deed of trust to the Marine Trust Company of Buffalo of all their property for the benefit of creditors. The deed of trust provided for distribution of assets among the creditors without any priority or preference, except such as might be lawful within the meaning of the Federal Bankruptcy Law to which reference was made for the guidance of the trustee. The deed of trust also limited the power of the trust company to sell the assigned property by a provision that the trustee should make no sale of any of the capital assets of the assignors without the consent of a majority of the members of a creditors' advisory committee for which provision was made in the deed of trust. The creditors' advisory committee, in addition to the power implied in this provision, was also given general supervisory power over the trustee. One member of the creditors' advisory committee was Charles A. Wenborne, a director of the plaintiff trust company, and son-in-law of the plaintiff Burk. He was the representative of the plaintiff trust company on the creditors' committee.

The Marine Trust Company, upon the delivery of the trust deed by the Green interests to it, undertook the operation of the properties conveyed to them but such operation is conceded by all not to have been successful, and the Marine Trust Company was desirous of making a sale of the property in its hands.

The plaintiffs and George W. Wright were large creditors of Green or his corporations.

The defendants are Chautauqua county business men and are the executors of the will of George W. Wright, deceased, and two of four residuary legatees thereunder. George W. Wright died on the 4th day of July, 1921. All the transactions of defendant David S. Wright were on behalf of both defendants.

On the 30th day of November, 1921, the defendant David S. Wright made a written offer to the Marine Trust Company to purchase the Green assets for $100,000, and this offer was accepted by the Marine Trust Company subject to the approval of a majority of the number and amount of the creditors. Before it was approved and the proposal carried into effect, the amount of the purchase price was increased by a contribution by Conrad W. Green of $5,000, so that the amount received by the Marine Trust Company

as trustee was sufficient to allow a payment of fifteen per cent to all creditors. The negotiations leading up to this contract between David S. Wright and the Marine Trust Company for the purchase of the Green properties were carried on during the fall of 1921 at the request of and with the co-operation of Conrad W. Green, as the officers of the Marine Trust Company knew, it being understood by all concerned that Conrad W. Green was in turn to purchase the properties from defendant David S. Wright.

The creditors' advisory committee, of which, as has been mentioned, plaintiff trust company's representative was a member, on December 5, 1921, adopted a resolution authorizing the sale of the properties to David S. Wright for a purchase price sufficient to pay the creditors fifteen per cent on the face amount of their claims. On the 27th day of December, 1921, all creditors having by that time agreed to compromise their claims on receipt of fifteen per cent of their face amount, the transaction between the Marine Trust Company and the defendant David S. Wright was carried through, the purchase price was paid to the trust company, and the property transferred to him.

It is necessary now to refer to the transactions between plaintiff trust company and the defendants which led up to the arrangement embodied in the instrument of December 16, 1921, signed by David S. Wright and quoted above. As early as October twentieth, the plaintiff trust company and the defendants were in communication with respect to a purchase of the property by the defendant David S. Wright. On that day the vice-president of the plaintiff trust company wrote to David S. Wright in respect to the Green properties and their valuations. This letter listed eleven pieces of real estate with a net valuation of $228,800. The letter contained the statement that the writer did not personally know the value of all the pieces of property, but that those which he did know seemed to be appraised properly. The letter listed other items which should, as the writer said, have good value as follows:

| | |
|---|---:|
| Machinery and equipment | $141,000 |
| Jugs, carboys and storage cans | 14,000 |
| 215,000 gallons of vinegar inventoried at twenty cents a gallon | 43,000 |
| 6,000 empty barrels listed at | 36,000 |
| but stated probably not to be worth that much, but to have good value. | |
| 6,750 cases of empty gallon glass containers | 13,500 |

These items aggregated $476,300. The letter then proceeds: " Of course, there are many other assets — or socalled assets —

running up the grand total to \$900,000, but I thought what you wanted to know would be about assets that have a real known value and those are the only ones touched on in this letter."

The letter concludes: " As I understand it, if the trustee accepts your proposition, you will own all assets absolutely, free and clear, except for properly taking care of Green and others who may co-operate with you."

Finally came the contract between the plaintiff trust company and the defendant David S. Wright embodied in the letter of December sixteenth, and the reply of the same date in which it was agreed how the plaintiffs were to be taken care of by the defendant David S. Wright. Even according to the testimony of the officers of the plaintiff trust company the negotiations between defendant David S. Wright and the officers of the trustee company began two or three weeks before the correspondence of December sixteenth occurred. That the plaintiff trust company was a co-operating factor in defendants' transactions with the Marine Trust Company and the creditors' compromise of their claims against the Greens and the Green corporations is fully recognized in the letter of December sixteenth in the phrase " in consideration of your services and assistance in bringing about said sale, and with relation to the consummation of the transaction involved." The specific form of co-operation other than the participation of Wenborne in the creditors' committee and the execution of the fifteen per cent compromise release is not disclosed. It was Green who got the consent of the outstanding creditors. But in any event we have it in black and white that a participation in the assets purchased by Wright was given in consideration not only of services and assistance in bringing about the sale to the defendants, but also in consideration of the plaintiff trust company's approval and consent to the proposition submitted in the letter of November 30, 1921. It is significant that the consent with fifteen per cent compromise release was executed by the plaintiff trust company on the same day that defendant David S. Wright signed the instrument assuring the plaintiffs' participation in the purchase.

As a result of these transactions the Wrights secured for the estate of which they were beneficiaries a chance to recoup the eighty-five per cent loss on their claims against Green and his corporations out of the property of the Green concerns which the defendants purchased. This was open and above board and apparent to every one. Green obtained a chance to salvage something from his own shipwreck. This was apparently understood by the Marine Trust Company and the creditors. The plaintiffs secured a chance to recoup their losses out of the same resources and if

the trust company's estimate of the valuation of the property purchased was not wholly fantastic, the chance was a very good one. This chance was kept secret from the Marine Trust Company, from all of the creditors' committee, except Wenborne, the representative of the plaintiff trust company, and from all of the creditors other than the parties to this action.

A sale of the Green properties was subsequently made by the defendants to a corporation organized by Green. The terms of this agreement would have secured payment to the plaintiffs and to the Wright estate of the maximum amounts of their respective claims stated in the letter of December sixteenth. Green was unable to make the payments provided in this contract and returned the property to the defendants.

In this action the plaintiffs, relying on the arrangement embodied in the letter of December sixteenth, have come into court demanding an accounting as beneficiaries of a trust.

Secrecy and preference, as the learned court who heard this case at Special Term well said, are the two things that, when combined, make contracts of this kind illegal. Here both are present. The consent of trustee, of creditors' committee, of creditors to the Wright offer of purchase was obtained without disclosure to them or knowledge on their part that the plaintiffs had an interest in the purchase, without knowledge that a member of the creditors' committee was representing a person interested in the purchase, without knowledge that the plaintiffs were receiving a trust agreement as a result of which they might entirely make good their loss, while apparently consenting to an acceptance of but fifteen per cent of their proved claims.

This case is very similar in principle to *Klaw* v. *Famous Players-Lasky Corporation* (207 App. Div. 211; affd., 239 N. Y. 592). While it appears from the opinion in that case that the secret contract was exacted by its beneficiary as the price of an agreement, the violence of the fraud is not the controlling element. It is quite as indefensible to enter into a secret agreement for a preferential right by negotiation as it is to exact one. The language of Mr. Justice McAvoy in the opinion in the case cited is pertinent here. "The rule against enforcing agreements conceived in secrecy and concealment is not founded upon a necessary showing that the other creditors are deprived of something which otherwise they would have received, but upon the principle that every one concerned as participant in the agreement should be entitled to assume that no one will secretly receive better results than are granted with the concurrence of all. The measure of propriety is disclosure, and not the comparative injury from non-disclosure. It is not necessary that the

creditors' fund be diminished in order to invalidate the secret agreement."

Preference and secrecy combined here as the bare statement of the facts discloses. The agreement is against public policy, void and unenforcible.

The judgment, therefore, should be reversed and judgment granted for the defendants, with costs. Conclusions of law should be disapproved and new conclusions of law made.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ.

Judgment reversed on the law, with costs, and complaint dismissed, with costs. Conclusions of law disapproved and new conclusions made.