LUCIUS B. WARNER, as Assignee, etc., Appellant, *v.* EDWARD S. JAFFRAY et al., Respondents.

A general assignment for the benefit of creditors, executed as prescribed by the General Assignment Act (Chap. 466, Laws of 1877, as amended by chap. 318, Laws of 1878), takes effect, so far as property situate in this State is concerned, from the time of its delivery ; all requirements subsequent to the delivery are directory merely, and an omission to obey any of them does not avoid the assignment.

Such an assignment, however, does not take effect to pass title to personal property situate in another State in contravention of the laws of that State.

The general rule that a voluntary transfer of personal property is to be governed by the laws of the owner's domicile is not of universal application, but yields when the law and policy of the State, where the property is located, have prescribed a different rule of transfer from that of the State where the owner lives.

On March 1, 1881, W., a resident of this State, made a general assignment for the benefit of creditors to plaintiff ; at that time W. owned personal

property situate in two counties in Pa. The assignment was recorded in one of those counties on the 18th and in the other on the 19th of March. On the day of the execution of the assignment, but after its delivery, defendants, creditors of W. and residents in this State, without actual notice of the assignment, commenced actions against the assignor in Pa., and by virtue of attachments issued therein, the property situate in that State was levied upon ; at the time the assignment was made a statute of Pa. regulating such assignments, provided that an assignment of property situate in that State, made by a person not a resident therein, may be recorded in any county where the property is situated and shall take effect from its date, " provided that no *bona fide* purchaser, mortgagor or creditor, having a lien thereon before the recording in the same county, and not having previous actual notice, shall be affected or prejudiced." In an action to restrain defendants from further proceeding under the attachment, *held,* that as defendants acquired valid liens on the property in Pa. prior to the recording of the assignment in that State, those liens were saved from the operation of the assignment ; that the laws of this State did not follow defendants into Pa., and they had the same right to enforce payment of their claim out of their debtor's property found there as a resident creditor had ; that they could not be treated as *tortfeasors* here for acts lawful where they were committed ; and that the action was not maintainable.

*Ockerman* v. *Cross* (54 N. Y. 29), *Bagbey* v. *A. M. & O. R. R. Co.* (86 Penn. St. 291), distinguished.

(Argued May 6, 1884 ; decided June 3, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made August 27, 1883, which affirmed a judgment in favor of defendants, entered upon the report of a referee. (Reported below, 30 Hun, 326.)

The nature of the action and the material facts are stated in the opinion.

*Everett P. Wheeler* for appellant. The conveyance to plaintiff was voluntary and on a valid consideration, and is valid by the laws of this State and of Pennsylvania. ( *Van Buskirk* v. *Warren*, 13 Abb. Pr. 145, 161; 2 Keyes, 119 ; 4 Abb. Ct. of App. Dec. 457 ; 5 Wall. 314; 7 id. 139 ; *Ockerman* v. *Cross*, 54 N. Y. 29; *Bentley* v. *Whittemore*, 4 C. E. Green, 462; *Moore* v. *Bentley*, 2 Vroom, 90 ; *Bartlock* v. *Taylor*, 16 Pick. 335 ;

*Bagley* v. *Ins. Co.*, 5 Norris [Penn.], 29 ; *Caskie* v. *Webster*, 2 Wall. Jr. 131 ; *R. I. B'k* v. *Danforth*, 14 Gray, 143 ; *Thurston* v. *Rosenfeld*, 42 Mo. 474 ; *Bethel* v. *Bethel*, 4 Cent. L. J. 297 ; *Williams* v. *Ingersoll*, 89 N. Y. 508, 524 ; *Osgood* v. *Mayor*, 61 id. 524.) The courts of this State will not give effect to foreign laws which contravene the spirit of our own where the rights of its citizens are concerned. (*Edgerly* v. *Bush*, 81 N. Y. 199 ; *Dike* v. *Erie R. R. Co.*, 45 id. 118 ; *Martin* v. *Hill*, 12 Barb. 631.) The assignee could not in the Pennsylvania suit claim that the debt was not valid ; he had no interest in that suit and could not be made a party. (*Honegger* v. *Wettstein*, 94 N. Y. 252.) Plaintiff's only remedy is in equity. (*Lawrence* v. *Batcheler*, 12 Rep. 785 ; *Dehon* v. *Foster*, 4 Abb. 550 ; 7 id. 57 ; *Kittle* v. *Kittle*, 8 Daly, 72 ; *Vail* v. *Knapp*, 49 Barb. 299 ; *Keyser* v. *Rice*, 47 Md. 203 ; *Snook* v. *Snetzer*, 25 Ohio St. 516 ; *Engel* v. *Shewman*, 40 Ga. 206 ; *Chaffee* v. *Fourth Nat. B'k*, 11 Rep. 298 ; *Erie R. Co.* v. *Ramsay*, 45 N. Y. 637 ; *Coyne* v. *Weaver*, 84 id. 386.) A discharge is no necessary part of a bankrupt or insolvent law. (1 Kent's Com. 422, 423 ; id. 390, 391, note *a ; Sackett* v. *Andross*, 5 Hill, 317–327 ; 5 Webster's Works, 320.) Under the United States Bankrupt Act of 1867 a distinction exists between an assignment at common law and the system of administering the insolvent estate created by statute. (*Haas* v. *O'Brien*, 67 N. Y. 597 ; *Mayer* v. *Hillman*, 1 Otto, 496 ; *Boese* v. *King*, 108 U. S. 379 ; 78 N. Y. 371 ; *Southard* v. *Benner*, 72 id. 424.) A general assignment for the benefit of creditors, when made pursuant to a statute regulating assignments, has all the force and effect of a decree *in invitum* and also the effect of a voluntary transfer. (*Holmes* v. *Remsen*, 4 Johns. Ch. 460.) Statutes do not apply to persons not subject to the jurisdiction of the legislative body enacting them, unless it is expressly so enacted. (*Birm. Iron Foundry* v. *Glen. Cove Co.*, 78 N. Y. 30 ; *Whitford* v. *Panama R. R. Co.*, 24 id. 465 ; *U. S.* v. *Palmer*, 3 Wheat. 610, 630 ; Story's Conflict of Laws, § 32 ; *Pierson* v. *People*, 79 N. Y. 433 ; *In re Rochester Water Comm'rs*, 66 id. 413 ; *Baldwin* v.

*Hale*, 1 Wall. 223 ; *Bagbey* v. *At. O. & M. R. R.Co.*, 86 Penn. St. 291.) Recording is not essential to the validity of an assignment. (*R. R. Co.* v. *Collins*, 57 N. Y. 641 ; 1 Abb. N. C. 47 ; *Brennan* v. *Wilson*, 71 N. Y. 502 ; *Taylor* v. *Delaney*, 2 Cai. Cas. 143 ; *Goodell* v. *Jackson*, 20 Johns. 693 ; *Bitsinger* v. *Chapman*, 88 N. Y. 495.)

*William Allen Butler* for respondents. Defendants, as attaching creditors in the courts of Pennsylvania, had a valid lien although they were not residents of the State. (1 Brightly's Purdon's Digest, 92, § 8 ; *Philson* v. *Barnes*, 50 Penn. St. 230 ; *Hib. Nat. B'k* v. *Lacombe*, 84 N. Y. 367 ; *Claflin* v. *Frenken*, 29 Hun, 288 ; *Plimpton* v. *Bigelow*, id. 362, 385.) The attachments were judicial proceedings which bound the property of Weld to answer to any judgment of the court in actions in which the writs of foreign attachments were issued. (Purdon's Digest, 50, § 50 ; *Morgan* v. *Whatmaugh*, 5 Whart. 125 ; *Taylor* v. *Carryl*, 12 Harris, 261 ; 20 How. [U. S.] 583, 597, 598 ; *Peck* v. *Jenniss*, 7 How. 612 ; *Green* v. *Van Buskirk*, 7 Wall. 139, 148 ; U. S. Const., art. 4, § 1 ; U. S. R. S., § 905.) Where the property of a non-resident has been seized by a creditor, a non-resident of the State where the property is and a resident of the same State as the debtor, the *lex rei sitæ* will govern. (*Green* v. *Van Buskirk*, 5 Wall. 307 ; 7 id. 139 ; 34 Barb. 457 ; 2 Keyes, 119 ; *Crapo* v. *Kelly*, 16 Wall. 610, 619, 642 ; *State R. R. Tax Cases*, 92 U. S. 575 ; *Edgerly* v. *Bush*, 81 N. Y. 199, 203, 204 ; *Guillander* v. *Howell*, 35 id. 657 ; *Hibernia Nat. B'k* v. *Lacombe*, 84 id. 367, 385 ; *Holmes* v. *Remsen*, 4 Johns. Ch. 460, 471 ; *People, ex rel. Thompson,* v. *Comm'rs, etc.*, 23 N. Y. 224 ; *People* v. *Gardner*, 51 Barb. 352 ; *People, ex rel. Jefferson,* v. *Smith*, 24 Hun, 492 ; 88 N. Y. 576.) By the law of New York the liens of the defendants' attachments were superior to the title derived by plaintiff under the assignment to him. (Laws of 1877, chap. 466, § 2 ; *Rennie* v. *Bean*, 24 Hun, 123.)

EARL, J. On the 1st day of ~~May,~~ 1881, at Jamestown in this State, DeForest Weld, a resident of that place, made an

assignment to the plaintiff for the benefit of his creditors. The assignment was acknowledged, and delivered to and accepted by the assignee at two o'clock in the afternoon of that day, but it was not recorded in the clerk's office of Chautauqua county until eight o'clock, A. M., of the next day. At the time of the execution of the assignment the assignor owned a large amount of personal property, situated at the place of his residence, and also in Crawford and Warren counties in the State of Pennsylvania. The assignment was recorded in Crawford county March 18, and in Warren county March 19, 1881. The defendants were residents of the city of New York, and creditors to a large amount of the assignor. On the 1st day of March, after the execution and delivery of the assignment, they commenced actions against the assignor in Crawford and Warren counties, and in each of those counties process of foreign attachment was issued, and by virtue thereof in the afternoon of the 1st day of March, between three and four o'clock, the property of the assignor in each of those two counties was attached, the defendants at the time of the service of the attachments having no actual notice of the assignment made by Weld. The plaintiff having first demanded possession of the property attached of the sheriffs who served the attachments, commenced this action against these defendants to restrain them from further proceeding under the attachments, and thus far he has been unsuccessful. The sole question for our determination is whether the assignment made in this State was effectual to transfer the assignor's property situated in Pennsylvania so that it could not afterward be attached there as his property by creditors going there from this State.

The assignment took effect from the time of its delivery. Section 2 of chapter 466 of the Laws of 1877 (the General Assignment Act) provides how a general assignment for the benefit of creditors shall be executed. It must be in writing and acknowledged, and the assignee must assent thereto in writing, and when it has thus been executed and delivered, it takes effect, and the title to the property passes to the assignee. All else required by the statute may be done afterward, and if any

of the other requirements are omitted the assignment is not thereby rendered void. Section 3 of the act provided that unless the required inventory should be filed within thirty days the assignment should be void. But that section was amended and re-enacted in 1878 (Chap. 318), and that provision was omitted; and hence there is now no provision making the assignment void for the omission to take any of the steps subsequent to the execution and delivery of the assignment. The statute requires the assignment to be recorded, the assignee to give a bond and an inventory to be filed. If the assignee fails to make and file an inventory he may be removed. So, too, if he fails to record the assignment or to give the bond, he may, under section 6 of the act of 1877, as amended by the act of 1878, be removed by the county judge. All the other requirements subsequent to the execution and delivery of the assignment are merely directory, and there is ample power in the county judge to enforce their observance. There is no occasion or reason to avoid the assignment for the omission of any of such requirements. If the assignment were to be held inoperative until recorded, then it would be in the power of the assignee, by simply retaining it in his possession, to defeat its operation. The Assignment Act of 1860 (Chap. 348) provided that the assignment should be in writing, acknowledged and recorded; and yet it was held under that act that it took effect from the time of its delivery. (*S. B. & N. Y. R. R. Co.* v. *Collins,* 57 N. Y. 641; *S. C.,* 1 Abb. N. C. 47; *Brennan* v. *Willson,* 71 N. Y. 502.) In that act the provision requiring the assignment to be recorded was in the sixth section, while the provision requiring it to be in writing and acknowledged was in the first section. It cannot be supposed that the legislature, by putting all the language of the two sections into one in the act of 1877, meant to give a different effect to the same language, and to inaugurate a new policy. The presumption is, that legislating upon the same subject and using substantially the same language, after the language had received judicial construction, it meant to accomplish the same purpose and to continue the same system. It is the general

rule that all instruments take effect from their execution and delivery, and if the legislature had intended a different rule in reference to these assignments it is to be presumed that its intention would have been plainly expressed. Hence we must hold that this assignment took effect on the 1st day of March, 1881, at the time of its execution and delivery, and if it operated upon the property consisting of merchandise situated in the State of Pennsylvania, then the plaintiff became entitled thereto and can maintain this action.

The assignment was a mere voluntary conveyance, and can have no greater effect, so far as passing title to the property assigned, than any other conveyance. It did not operate upon the creditors of the assignor, nor place them under any obligations. It left them entirely free to act. They could utterly refuse to have any thing to do with it, and retain their claims and enforce them in their own time, as best they could, against their debtor. The assignee became a trustee for such creditors of the assignor only as chose to accept him as such, and without their assent the assignment did not bring the creditors into any relation with the assignee, or with each other. The law did not take this insolvent's property for distribution among his creditors, but its distribution was his own act. Any one of his creditors could, notwithstanding the assignment, enforce his claim against any property of the assignor not conveyed by the assignment, without violating any rights or equities of the other creditors. Equity does not condemn the efforts of one creditor to secure the payment of his claim, even if, in consequence of such efforts, nothing should be left for the other creditors. On the contrary, the vigilant creditor has always been rewarded for his vigilance. Therefore, the sole right of this plaintiff to maintain this action must rest upon the fact that the title to the property situated in Pennsylvania passed to him by the assignment before it was attached by the defendants.

It is clear, upon authority, that the title did not pass. It is a general rule that the voluntary transfer of personal property is to be governed, everywhere, by the law of the owner's domi-

cile, and this rule proceeds on the fiction of law that the domicile draws to it the personal estate of the owner, wherever it may happen to be. But this fiction is by no means of universal application, and yields whenever it is necessary for the purposes of justice that the actual *situs* of the thing should be examined, and always yields when the law and policy of the State where the property is located have prescribed a different rule of transfer from that of the State where the owner lives; and to this effect are all the authorities. (*People, ex rel. Hoyt,* v. *Comm'rs of Taxes,* 23 N. Y. 225 ; *People, ex rel. Jefferson,* v. *Smith,* 88 id. 576 ; *Guillander* v. *Howell,* 35 id. 657; *Ockerman* v. *Cross,* 54 id. 29; *Edgerly* v. *Bush,* 81 id. 199 ; *Hibernia Nat. B'k* v. *Lacombe,* 84 id. 367; *Green* v. *Van Buskirk,* 7 Wall. 139 ; *Hervey* v. *R. I. Locomotive Works,* 93 U. S. 664.)

At the time this assignment was made, there was a statute in Pennsylvania which regulated how assignments should be made, executed and recorded ; and one of the sections is as follows : "Whenever any person, making an assignment of his or her estate, situated in this Commonwealth, for the benefit of creditors, shall be resident out of this State, such assignment may be recorded in any county where such estate, real and personal, may be, and take effect from its date, provided that no *bona fide* purchaser, mortgagee or creditor, having a lien thereon before the recording in the same county, and not having previous actual notice thereof, shall be affected or prejudiced." This section plainly applies to this case. The assignor was a non-resident, and the defendants obtained their liens by their attachments before the assignment was recorded in the counties where the property was situated, and before they had any notice thereof, and hence those liens were saved from the operation of the assignment. The assignment, although operative here, could not operate in Pennsylvania in contravention of the laws of that State, and for this the case of *Green* v. *Van Buskirk* is a precise authority. In that case the facts were these : One Bates lived in Troy in this State and owned certain iron safes in Chicago, and in order to secure an existing debt to Van Buskirk and others, executed and de-

livered to them in the State of New York a chattel mortgage on the safes. Two days after this one Green, also a creditor of Bates, sued out of the proper court of Illinois, a writ of attachment, caused it to be levied on the safes, got judgment in the attachment suit, and had the safes sold in satisfaction of his debt. At the time of the levy of the attachment, the mortgage had not been recorded in Illinois, nor had possession of the safes been delivered under it, nor had the attaching creditor notice of its execution. Green, Van Buskirk and Bates were citizens of this State. By the law of Illinois mortgages of personal property were void as against third persons, unless acknowledged and recorded, and unless the property was delivered to and remained with the mortgagee. After the safes had thus been sold in Illinois under the attachment, Van Buskirk sued Green in the Supreme Court of this State for taking and converting the safes, and he recovered on the ground that the mortgage being valid here at the place of its execution, and the residence of the parties, was valid in Illinois and everywhere, and that recovery was affirmed in this court. ( *Van-Buskirk* v. *Warren,* 34 Barb. 457 ; 4 Abb. Ct. of App. Dec. 457.) The case was then taken by writ of error to the Supreme Court of the United States, and there the judgment was reversed; and it was held that although the mortgage was operative and valid in this State, it could not operate in Illinois in contravention of the local law, and that an attachment sued out in that State by a resident of this State, and levied on the safes after the execution and delivery of the mortgage in this State, held the safes against the mortgage. There is no feature of this case to distinguish it in principle from that. There the mortgage, as the assignment here, was valid between the parties. There the mortgage, as the assignment here, was by the local law not invalid as between the parties, but only as to third persons. There as here all the parties resided in this State. It is not true, as claimed by the learned counsel for the plaintiff, that the only necessary point decided there was as to the effect of the Illinois judgment under the Federal Constitution. The Illinois court did not and could not settle in the

attachment suit the title to the property attached, for that question was not involved. If the title to the property had passed by the mortgage executed here, then the property could not have been attached there as the property of the mortgagor; and notwithstanding the judgment there, the action here for conversion could have been maintained by the mortgagee, and that judgment would have been wholly immaterial and would have furnished no defense. But it was only upon the theory that the title did not pass as against the attaching creditor that that judgment became material; and so the Federal court held that the title did not pass as against the attaching creditor; and hence that the levy and sale there, under the attachment, passed the title and protected the attaching creditor, and that the courts of this State were bound to give full faith and credit to the judicial proceedings there under which the property was sold. Two points were, therefore, necessarily involved in the decision of the Federal court: (1) The effect in Illinois as against an attaching creditor of the prior mortgage executed and delivered here, and (2) the effect of the Illinois judicial proceedings. The doctrine of that case was recognized and reiterated in the case of *Hervey* v. *R. I. Locomotive Works*, in which Davis, J., writing the opinion and referring to the case of *Green* v. *Van Buskirk* in 5 and 7 Wall., said: "That the liability of property to be sold under legal process issuing from the courts of the State where it is situated, must be determined by the law there rather than that of the jurisdiction where the owner lives. These decisions rest on the ground that every State has the right to regulate the transfer of property within its limits, and that whoever sends property into it impliedly submits to the regulations concerning its transfer in force there, although a different rule of transfer prevails in the jurisdiction where he resides. He has no absolute right to have the transfer of property lawful in that jurisdiction respected in the courts of the State where it is found, and it is only on a principle of comity that it is ever allowed. But this principle yields when the laws and policy of the latter State conflict with those of the former." The case of *Guillander* v. *Howell* was

in all respects like this, except there the property was attached by a creditor who resided in the State of New Jersey where the property was situated. The case did not turn upon the point that the attaching creditor resided in New Jersey, but upon the point that the assignment, although valid in this State, was void under the laws of that State.

There was no law which forbids these defendants going into the State of Pennsylvania to collect their claim there of their debtor. In going there they did no wrong to any one, and did not violate the legal or equitable rights of any one. The laws of this State did not follow them into that State, and they had the same right to enforce payment of their claims out of the property of the assignor found there, and as to them belonging to him, as any resident creditor had. A foreign creditor has the same rights here against the property of his non-resident debtor as a resident creditor has, and so we held in *Hibernia B'k* v. *Lascombe* (*supra*). In that case DANFORTH, J., said: "Once properly in court and accepted as a suitor, neither the law nor court administering the law will admit any distinction between the citizen of its own State and that of another. Before the law and in its tribunals there can be no preference of one over the other."

The case of *Ockerman* v. *Cross* (*supra*) is not an authority for the plaintiff. There it was held that a voluntary assignment by a debtor residing in Canada, valid by the laws of his domicile, and not invalidated by any law of this State, was valid here and operated to transfer the assignor's property situated here. That the decision would have been different if the assignment had been in contravention of our laws or policy, is fully recognized in the opinion of the court. The case of *Bagby* v. *Atlantic, Miss. and Ohio Railroad Co.* (86 Penn. St. 291), cited by the learned counsel for the plaintiff, is not analogous to this case. There a receiver had been appointed in the State of Virginia of the property of the railroad company, and at the time of such appointment there was due to it, from a debtor in Pennsylvania, a certain sum of money which the receiver claimed. But after his appointment a creditor residing in

Virginia went to the State of Pennsylvania and there commenced suit against the railroad company and attached the debt due it, and it was held that the receiver was entitled to the debt. The transfer of the title to the receiver was not in contravention of any law of Pennsylvania, and hence it was held that as against a citizen of Virginia bound by its laws, the appointment of a receiver, binding upon him there, would, by comity, be held to be binding upon him in Pennsylvania. In *Philson* v. *Barnes* (50 Penn. St. 230) it was held that a debt due to a non-resident debtor was bound by a foreign attachment issued in that State, notwithstanding a previous assignment by him in Maryland, in trust, of all his estate and effects, where the assignment was not recorded within the county in which the debt attached was due as required by the statute of Pennsylvania above quoted, and no notice of the assignment was given to the attaching creditor. There the attaching creditor was a resident of Pennsylvania, but the case did not turn upon that point, and as we have above shown that circumstance could make no difference.

The fact that these defendants had merely caused the property to be attached and had not yet recovered judgment, and caused the property to be sold, does not in principle distinguish this case from that of *Green* v. *Van Buskirk*. If in that case Green had merely caused the safes to be seized by virtue of his attachment, the suit subsequently commenced against him in this State for conversion would have had the same foundation and the same defense. The defendants cannot be treated as *tortfeasors* here for acts perfectly lawful where they were committed. If a judgment in Pennsylvania would have protected them, then the attachments will protect them, and there are no principles of law or equity which authorize any court in this State to restrain them from proceeding in an orderly and lawful way to reap the fruits of their vigilance.

We conclude, therefore, that the property of the assignor, situated in the State of Pennsylvania, was liable to attachment there at the suit of these defendants, notwithstanding the previous assignment in this State, and that the courts of this

State under the Federal Constitution are bound to respect the liens of the attachments and to give "full faith and credit" to the judicial proceedings in the action instituted there.

It follows from these views that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.