Vito J. Titone, J.
In this action to recover excess proceeds held by defendant, Rosenthal & Rosenthal, Inc. (Rosenthal), a factor of accounts receivable of a defunct pants manufacturer, Balabaskins, Ltd. (Balabaskins), plaintiff, Metro Burak, Inc. (Metro), a judgment creditor of the manufacturer, moves for summary judgment under CPLR 3212. By cross motion, defendant moves for leave to interplead the funds held by it on the ground that an assignee for the benefit of creditors of Balabaskins’ assets, to wit, New York Credit Men’s Adjustment Bureau, Inc. (Adjustment Bureau), is also making claim to such proceeds which are in the sum of approximately $20,000.
On September 20, 1973, a meeting of Balabaskins’ creditors was held at the assignee’s office. In attendance was plaintiff’s attorney, Herbert Ginzburg. Submitted in evidence is an assignment for the benefit of creditors to the Adjustment Bureau as assignee. It was executed by Balabaskins’ vice-president. The acknowledgment of his signature recites that he executed it on the same day the meeting of the creditors was held, to wit, September 20, 1973.
On October 2, 1973, the plaintiff entered judgment against Balabaskins and also had execution issued by the Sheriff pursuant to such judgment. On the following day, October 3, *639 1973, the Sheriff levied upon defendant as garnishee and holder of the subject excess proceeds.
Returning to the assignment for the benefit of creditors, the instrument was executed by the secretary of the Adjustment Bureau evidencing its assent to the assignment, and the acknowledgment of his signature recites that he executed it on October 15, 1973. The assignment was filed in the County Clerk’s office two days later, October 17, 1973, or two weeks after the execution of levy under the judgment.
In both its motion for leave to interplead and supporting brief, the Adjustment Bureau raises three main points. It argues that since the written assignment was delivered to it on September 20, 1973, which was prior to the levy, such assets vested in it as of that date, notwithstanding that if failed both to give written and acknowledged consent and to record the instrument, until after the levy. Thus, claims the Adjustment Bureau, the levy was ineffective as to such assets passing to it as assignee under the assignment, and the plaintiff is not entitled to a priority or preference over other creditors.
The assignee also asserts that since the statutory 90-day life of the levy has expired, and the plaintiff did not extend it, such levy is now void and cannot be used by the plaintiff as a basis for a priority.
With respect to Ginzburg’s attendance at the creditors’ meeting on September 20, 1973, the assignee contends that Ginzburg not only attended it, but agreed to have the plaintiff become a member of the creditors’ committee, and participate in distributing Balabaskins’ assets to the creditors under the assignment.
By plaintiff electing to become a member of the creditors’ committee, argues the assignee, the plaintiff thereafter breached its fiduciary relationship both to the creditors and other members of the committee, in that it participated in the assignment without disclosing its intention to obtain a judgment against Balabaskins and then levy thereunder.
As to the priority issue, plaintiff asserts that under section 3 of the Debtor and Creditor Law, the assignment did not become effective until after (1) the written acceptance and acknowledgment of such acceptance of the assignee was effectuated and (2) the instrument was recorded. Thus, argues plaintiff, since the Sheriff’s levy was made prior to the effective completion of the assignment, its claim under the dock *640 eted judgment must receive a priority or preference. With respect to the issue concerning the expiration of the levy, plaintiff maintains that priority of the judgment was established by the delivery of an execution to the Sheriff prior to the assignment being completed and recorded.
While admitting that Ginzburg attended the creditors’ meeting on September 20, 1973, plaintiff emphatically denies that he ever agreed that plaintiff would serve on the committee. According to Ginzburg, he attended the meeting solely as an observer in order to ascertain Balabaskins’ financial situation.
PRIORITY
The following language contained respectively in section 3 of the Debtor and Creditor Law, entitled "Requisites of general assignment”, and CPLR 5202 (subd [a]), entitled "Judgment creditor’s rights in personal property”, is relevant on the issue of priority.
"§ 3. Requisites of general assignment.
"Every conveyance or assignment by a debtor of his estate, real or personal, or both, to an assignee for the creditors of such debt or shall be in writing * * *
"Every such conveyance or assignment shall be duly acknowledged before an officer authorized to take the acknowledgment of deeds and shall be recorded in the county clerk’s office in the county where such debtor shall reside or carry on his business at the date hereof * * * An assignment by a corporation shall be recorded in the county where its principal place of business is situated. * * *
"The assent of the assignee, subscribed and acknowledged by him, shall appear in writing, embraced in or at the end of, or if indorsed upon the assignment, before the same is recorded, and, if separate from the assignment, shall be duly acknowledged.
"§ 5202. Judgment creditor’s rights in personal property.
"(a) Execution creditor’s rights. Where a judgment creditor has delivered an execution to a sheriff, the judgment creditor’s rights in a debt owed to the judgment debtor or in an interest of the judgment debtor in personal property, against which debt or property the judgment may be enforced, are superior to the extent of the amount of the execution to the rights of any transferee of the debt or property, except:
*641 "1. a transferee who acquired the debt or property for fair consideration before it was levied upon; or
"2. a transferee who acquired a debt or personal property not capable of delivery for fair consideration after it was levied upon without knowledge of the levy.”
The court takes cognizance of the fact that there seems to be an irreconcilable conflict in the case law in this State as to when an assignment for the benefit of creditors is deemed to become effective. Support for the assignee’s position that a judgment creditor’s levy is ineffective as against such an assignment made and delivered before the levy, but neither subscribed and acknowledged by the assignee nor recorded until after the levy, is found in Matter of Feldman & Co. (237 App Div 720) and also in Warner v Jaffray (96 NY 248). Thus, in the Feldman case, the First Department held that such an assignment made in good faith and for a lawful purpose and recorded three days after its delivery was valid and enforceable as to property in the possession of the assignee, as against an attempted levy of an execution made after delivery, but prior to the recording thereof. In effect, the First Department held that once the instrument is recorded, the assignment is consummated, and the taking effect of such instrument relates back to the time of delivery.
In the Warner case, the Court of Appeals held that such an assignment takes effect at time of delivery so far as the debtor’s property situate in this State is concerned; and all other requirements subsequent to execution and delivery, such as recording, were merely directory. (See, also, Matter of Berman, 173 App Div 689.)
However, in Rennie v Bean (24 Hun 123) the Third Department held that an assignment recorded without the assignee’s subscribed and acknowledged assent, although he may have orally agreed to act, is void as against creditors claiming against the property of the assignor. The court further held that under the statute at that time (L 1877, ch 466, § 1), to constitute a valid assignment for the benefit of creditors as to vest the property in the assignee, the written assignment must be signed and duly acknowledged by the assignor, be recorded in the County Clerk’s office, and the assent of the assignee must be in writing before recording. As to such provisions, the Third Department held the statute to be mandatory. (See, also, Rogers v Pell, 154 NY 518, 529; Hardmann *642 v Bowen, 39 NY 196; Lubinsky v Hoffman, 158 Misc 261, affd 246 App Div 803.)
In Franey v Smith (125 NY 44, 49-50), the Court of Appeals indicated that it was undoubtedly necessary that the assignee should execute and acknowledge his assent pursuant to the statute applicable to an assignment for the benefit of creditors and that it was also essential to have it recorded; and that while the instrument was effectual from the date of recording, it might also be subject to adverse rights intervening before the date of recording.
This court is constrained to conclude that all the procedures set forth in section 3 of the Debtor and Creditor Law must be completed before such instrument is deemed to take effect, at least insofar as third parties are concerned. Therefore, unless all such procedures are completed before a Sheriff’s levy is made under an execution of judgment, the court believes that the judgment creditor ordinarily obtains a priority with respect to such assets which are actually or ostensibly under the dominion and control of the assignee.
The court takes this position because it believes that it must give recognition and great weight to the essential purpose for which recording statutes have been enacted. Amongst other reasons, it has been held that the purpose of recording acts is to give notice of and to protect rights, as against subsequent purchasers and encumbrancers, not to create rights, not possessed, either of record or in fact (Magnuson v Breher, 69 ND 197). Registry acts were designed to avoid abuses and deceits by mortgages and pretended titles, and for protection of creditors, and should be construed to effect that end (Colonial Bldg. & Loan Assn. v Boden, 169 Md 493; cf. 76 CJS, Records, §2).
It should also be noted that the caption or heading of section 3 of the Debtor and Creditor Law is entitled "Requisites of general assignment” (emphasis added). Such term demonstrates that the Legislature intended that all the procedures set forth therein, should be peremptory in nature. Furthermore, with respect to each of the three elements or requisites, to wit, a written and acknowledged assignment, an acknowledged assent by the assignee, and recording of the instrument, the section directs that each "shall” be effectuated. In fact, the first sentence of the second paragraph of section 3 reads: "Every such conveyance or assignment shall be duly acknowledged before an officer authorized to take the acknowledgment *643 of deeds and shall be recorded in the county clerk’s office” (emphasis added). As plaintiff cogently argues, there is no logical basis for construing the requirement of a written and acknowledged assignment in the first half of the senteiice to be mandatory (which no one disputes), but then construing the requirement of recording contained in the second half, to be optional.
The word "shall” in a statute is ordinarily imperative, operating to impose a duty which may be enforced. It is presumed that the word "shall” when used in a statute, is mandatory (Swift v Smith, 119 Col 126; 82 CJS Statutes, § 380). Such presumption is even stronger when the word "shall” has admittedly a mandatory meaning in one of the several instances where it is used in the statute. In the absence of anything in a statute clearly indicating an intention to the contrary, where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout (Matter of Levine v Laurdan Mgt. Corp., 179 Misc 241, affd 180 Misc 672, affd 266 App Div 840; 82 CJS, Statutes, § 348).
EXPIRATION OF LEVY
Since the defendant Rosenthal refused to turn over the excess proceeds of Balabskins to the Sheriff because of the conflicting claim of the assignee, the court rejects the assignee’s contention that plaintiff’s claim lapsed because the original levy was returned unsatisfied and has expired. The rule that an execution creditor will lose his priority if he permits his execution to become dormant, does not apply where the delay in enforcing the execution does not result from the judgment creditor’s conduct (6 Weinstein-Korn-Miller, NY Civ Prac, par 5234.11; cf. McCarthy v Farley, 149 Misc 360; Knower v Barnard, 5 Hill 377).
Furthermore, the record reveals that the levy was served on October 3, 1973, and that during the 90-day statutory period of the life of the levy (CPLR 5232, subd [a]), to wit, on December 6, 1973, a restraining notice was served upon the garnishee Rosenthal (CPLR 5222, subd [b]).
CPLR 5232 (subd [a]) provides inter alia that after a person is served with execution, the garnishee is forbidden to make or suffer any sale, assignment, transfer of property in its possession until 90 days after service of the execution upon him, after which period the levy is void. However, CPLR 5222 *644 (subd [b]) provides that a person in possession of a debtor’s assets, and served with a restraining notice, is also forbidden to sell, assign or transfer any property of the judgment debtor for a period of one year after the notice is served, or until the judgment is satisfied, whichever event occurs first. Thus, the priority of the plaintiff judgment creditor, initially created by the delivery of the execution to the Sheriff, was effectively continued by the service of the restraining notice within the 90-day period in which the levy was in effect.
Moreover, since there is no indication in the record that the assignee acquired Balabaskins’ assets for a fair consideration, the subsequent rights of the assignee should not take precedence over a return of execution without satisfaction (Matter of International Ribbon Mills [Arjan Ribbons], 36 NY2d 121; CPLR 5202, subd [a]).
MEETING OF CREDITORS
Notwithstanding that plaintiff’s levy was made pursuant to execution of judgment before the statutory requirements for the assignment for the benefit of creditors were completed, thus presumably entitling plaintiff to a priority, the court is of the opinion that a question of fact exists which precludes the granting of plaintiff’s motion for summary judgment. The issue that must still be resolved is whether plaintiff’s attorney, Ginzburg, was merely an observer at the creditors’ meeting held on September 20, 1973, or whether he not only was in attendance, but also agreed that the plaintiff would be a member of the committee of creditors. Such issue must be determined at any subsequent trial.
Creditors who enter into an agreement with a debtor are required to observe good faith towards one another. This is especially true as to a general creditor assuming to act as one of a committee of creditors in negotiations with a debtor (Mintz v Clavin & Co., 4 AD2d 635, affd 4 NY2d 886; cf. White v Kuntz, 107 NY 518; Hanover Nat. Bank v Blake, 142 NY 404). Thus, a judgment creditor may be bound by a composition of creditors to the same extent as any other creditor, and an oral composition agreement may be binding on all the parties to such agreement (see 15A CJS, Compositions with Creditors, §§ 4,11).
However, an agreement amongst creditors is binding only on those creditors who are parties to it (Shekell v Ypsilanti Sav. Bank, 267 Mich 114); and where the existence or applica *645 tion of the creditors’ agreement is controverted, the burden of proof is on the party asserting such existence or application (Vanderhoef & Co. v Youmans, Inc., 85 Misc 418, 423; 15A CJS, Composition with Creditors, § 11).
CONCLUSION
Accordingly, the motion of the plaintiff for summary judgment is denied, and the cross motion of the defendant factor, Rosenthal & Rosenthal, Inc., for leave to interplead the funds held by it is granted, both without costs. At any subsequent trial, the only issue that should be litigated is whether the plaintiff, by its attorney, was elected a member of the creditors’ committee at the meeting held September 20, 1973, and agreed to liquidate and distribute Balabaskins’ assets under the subject assignment for the benefit of all of the creditors. If the answer to such question is in the affirmative, then the plaintiff may be estopped to assert the priority of the execution levy issued under its judgment. If the answer is in the negative, then such priority of plaintiff should be sustained.