**In re Burton FLAX, Debtor.**

**Bankruptcy No. 894–80501–478.**

United States Bankruptcy Court,
E.D. New York.

March 24, 1995.

Lacara & Caputo by Garrett R. Lacara, West Sayville, NY, for Gerald Hoffer.

Goldman, Horowitz & Cherno by Andrew Thaler, Mineola, NY, for Trustee.

### DECISION ON MOTION BY GERALD HOFFER TO VACATE STAY

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before the Court pursuant to a motion made by Gerald Hoffer ("Hoffer") to vacate the automatic stay in the case of Burton Flax (the "Debtor") to allow him to continue with his action to recover a judgment entered in the Supreme Court of the State of New York, Suffolk County on July 12, 1984 and to enforce his rights under the judgment. Andrew Thaler, Esq., the Chapter 7 Trustee (the "Trustee"), has opposed the motion, claiming that the Trustee has a superior interest in the property Hoffer is seeking to seize. Based on the applicable statutory authorities and the relevant case law, the Court finds that the Trustee had a superior lien on the property Hoffer seeks to

seize, and the motion to vacate the stay is denied.

## STATEMENT OF FACTS

Hoffer is the holder of a judgment entered in the Supreme Court, Suffolk County on July 12, 1984 against *inter alia* the Debtor in the amount of $20,792.56 in an action entitled "Gerald F. Hoffer against Burton Flax, Affiliated Homes, Inc. and Mariangel Associates, Inc." After the judgment was entered, Hoffer attempted to discover assets of the Debtor upon which he could levy to satisfy the judgment. The interest accrued on the judgment debt against this Debtor, when combined with the judgment amount, currently exceeds $25,000. As a result of Hoffer's investigations, Hoffer discovered that the law firm of Bronstein, Lustig & Hermer (the "Lustig Firm") was in possession of two certified checks in the aggregate amount of $25,000, payable to the Debtor and the Lustig Firm. The Lustig Firm was in possession of the checks under the following circumstances.

The Debtor had commenced an action for a debt owed to him against Joseph Riccardi, and had obtained a judgment against him in the amount of $37,336.72 plus interest from September 21, 1990. Riccardi's attorney commenced negotiations with the Debtor's attorney, the Lustig Firm, regarding satisfaction of the judgment. The parties agreed that the entire judgment would be satisfied in exchange for the receipt by the Debtor of certified checks in the aggregate amount of $25,000. The Debtor's attorney requested that the checks be made payable to "Burton Flax and Lustig, Bronstein & Hermer, as attorney". Mr. Riccardi issued two checks payable to "Burton Flax" in the amounts of $20,000 and $5,000. Mr. Riccardi's attorney signed the name of Burton Flax on both checks and deposited them into his escrow account.

On or about August 10, 1993, the attorney for Joseph Riccardi wrote two escrow checks payable to "Burton Flax and Lustig, Bronstein & Hermer, as attorney", in the amounts of $20,000 and $5,000, respectively. The attorney for Riccardi then had the checks certified, and delivered the checks to the Lustig firm, who accepted the certified checks as payment in full on Debtor's claim. Thereafter, a satisfaction of judgment was filed with respect to the judgment debt owed by Riccardi to the Debtor.

At no time were the certified checks endorsed with both signatures. On August 11, 1993, in an attempt to execute on the judgment owed by the Debtor to Hoffer, Hoffer's counsel served a subpoena duces tecum with restraining notice upon the Lustig Firm. On the same date, Hoffer's counsel served an Execution with Notice to Garnishee upon the Suffolk County Sheriff's Office.

On October 1, 1993, the Sheriff served a copy of the Execution upon Joy Leap, an employee at the Lustig Firm. On the same date, the Sheriff seized the unendorsed, certified checks by taking physical possession, and on October 4, 1993, the checks were deposited by the Sheriff in a safe deposit box at European American Bank. At no time were the checks negotiated by the Sheriff's office.

On January 28, 1994, an involuntary petition was filed against the Debtor. On February 4, 1994, the Sheriff's office withdrew the checks from the safe deposit box at European American Bank and on February 10, 1994, the Sheriff sent the checks by certified mail back to the Lustig Firm without direction from either Hoffer or the Trustee. The Debtor did not negotiate either check, nor did the Lustig Firm. The Lustig Firm is merely a stakeholder, and does not claim an interest in the proceeds of these checks.

On June 6, 1994, approximately six months after the involuntary petition was filed and in violation of the automatic stay, Hoffer obtained an Order to Show Cause in the Supreme Court for the State of New York against the Debtor, seeking, *inter alia*, a hearing to consider why the Lustig Firm should not be compelled to pay over the checks to Hoffer, or alternatively, granting power of attorney to Hoffer's firm so they could negotiate the checks on behalf of their client.

On September 15, 1994, the State Court judge issued an order granting Hoffer an extension of time to renew a subpoena duces

tecum with restraining notice effective upon vacatur of the stay of the Debtor's bankruptcy case, and upon proper notice.

Hoffer made the instant motion to vacate the stay to permit Hoffer to continue the State Court action to recover the funds pursuant to the judgment entered in favor of Hoffer. The Trustee opposed the motion, and asserted that the Debtor's estate had a superior right in and to the certified checks by virtue of the Trustee's strong-arm powers granted pursuant to Section 544 of the Bankruptcy Code.

At a prior hearing, the Court ordered that the checks be negotiated and deposited in an account under the exclusive care and custody of the Trustee, and requested briefing on the issue of whether, given the facts of this case, Hoffer's interest in the funds had been perfected pre-petition, thereby removing the funds from the Debtor's estate.

### DISCUSSION

A debtor's estate consists of all property or interests in property that a debtor has as of the date of the filing of the petition. 11 U.S.C. § 541 (1988).

Whether a levy on behalf of a judgment creditor is perfected is determined by State Law.

Section 5232(a) of New York State Civil Practice Law and Rules provides as follows:

The Sheriff ... shall levy upon any interest of the judgment debtor or obligor in personal property not capable of delivery, or upon any debt owed to the judgment debtor or obligor, by serving a copy of the execution upon the garnishee.... At the expiration of ninety days after a levy is made by service of the execution, or of such further time as the court, upon motion of the judgment creditor or support collection unit has provided, the levy shall be void except as to property or debts which have been transferred or paid to the Sheriff or to the support collection unit or as to which a proceeding under sections 5225 or 5227 has been brought.

N.Y.Civ.Prac.L & R § 5232(a) (McKinney Supp.1994) ("CPLR").

A reading of this statute reveals that the following must take place in order for a lien to be perfected based on a levy by service of execution:

1) there must be a judgment;

2) an execution must have been issued by the judgment creditor;

3) the Sheriff must have made a levy, which is effected by service of the execution upon the garnishee; and

4) the property or debt to be seized must be transferred or paid to the Sheriff or support collection unit within 90 days after a levy is made by service of the execution.

The parties agree that at least prior to the returning of the checks by the Sheriff, steps one through three had been taken. The dispute between the parties lies in (1) whether the Sheriff's failure to negotiate the checks within 90 days after the levy is fatal to Hoffer's claim that he perfected his lien on the funds; (2) whether, even if Hoffer's lien were perfected, the Sheriff's subsequent return of the checks post-petition relinquished the lien; and (3) whether, if Hoffer's lien is deemed invalid, the proceeds of the checks are property of the Debtor's estate, leaving Hoffer with an unsecured prepetition claim.

First, it is clear that the Sheriff's failure to obtain the endorsements of the Debtor and the Lustig Firm is fatal in this case. The items seized were two certified escrow checks, which are negotiable instruments as defined by N.Y.U.C.C § 3–104. As negotiable instruments, the checks were worthless without the proper endorsements. According to N.Y.U.C.C. § 3–202:

(1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery.

(2) An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.

Only if the instrument is properly negotiated shall the party in possession of the instrument become a "holder" for pur-

poses of N.Y.U.C.C. § 3–202. For proper negotiation to have taken place, the instrument must have been properly endorsed. Here, the certified checks were made payable to two parties, which, under N.Y.U.C.C. Section 3–204 requires the endorsement of both parties. Without the proper endorsements, the certified checks were merely pieces of paper which, without proper endorsement, had no value.

■ New York courts have not held the Sheriff's failure to obtain possession of the property to be seized fatal to the lienor's interest in every case, but the courts have made an exception only where the failure is caused by a third party's failure to comply with the Sheriff's directives to turn over the property. *See Knapp v. McFarland*, 462 F.2d 935, 940, 941 (2d Cir.1972) (Where sheriff's failure to obtain custody of notes was not due to lack of diligence on the sheriff's part, levy was deemed to have taken place); and *Metro Burak, Inc. v. Rosenthal & Rosenthal, Inc.*, 83 Misc.2d 637, 372 N.Y.S.2d 781 (1975). There has been no evidence presented to the Court that the Sheriff's failure to negotiate the checks was attributable to the Debtor or the Lustig Firm. It appears that the Sheriff failed to obtain the necessary signatures because of his own lack of diligence, which precludes the Court from finding that the Sheriff perfected the levy.

■ The fact that the checks were certified is of no significance to this case. Hoffer correctly points out that under N.Y.U.C.C. §§ 3–411 and 3–413[1], when a bank certifies a check, it accepts it, thereby legally binding itself to pay the amount to the party rightfully entitled to the funds. *Quistgaard v. EAB European American Bank and Trust Co.*, 182 A.D.2d 510, 583 N.Y.S.2d 210, 212 (1st Dep't 1992). However, even a certified check cannot be paid without the proper endorsement, especially if it is marked, as were the checks in question, with the statement "Payable only as originally drawn and when properly endorsed." This legend made it clear that the checks' payment would be conditioned on obtaining the proper endorsements.

This is not a case where the Debtor and the Lustig Firm resisted the endorsement or were actively prevented from endorsing the checks. There was no evidence presented that could cause this Court to conclude anything other than that the Sheriff made no attempt to obtain the signatures, which resulted in the Sheriff holding non-negotiable instruments. The Sheriff did not have the payment on the debt requisite to perfection pursuant to CPLR § 5232(a).

Even if the Court were to find that the Sheriff's act of returning the checks postpetition to the Lustig Firm did not nullify his prior retention of the checks within ninety (90) days of the levy of execution, he did not hold the payment, or property which was required. Had the Sheriff possessed endorsed negotiable instruments, this decision might be different. The fact is that the Sheriff held a non-negotiable instrument; a promise to pay. As a result, Hoffer's interest never rose above that of a mere judgment creditor.

The remaining question before the Court is the status of the Trustee's interest in the checks given Hoffer's failure to execute the levy. The Trustee's rights in and to property in which the Debtor may have an interest are outlined in Section 544(a) of the Bankruptcy Code.

■ As of the date of the filing of the involuntary petition, the Chapter 7 Trustee is given the status of a hypothetical lien creditor who has a judicial lien on all property on which a creditor could have obtained a judicial lien or a creditor with an execution against the debtor that is returned unsatisfied. *See* 11 U.S.C. § 544(a). In order to have defeated the trustee's interest, Hoffer must have had a perfected lien at the time of the filing of the involuntary petition. Since Hoffer did not perfect its lien against other judgment creditors by levy pursuant to the New York Civil Practice Law and Rules, the Trustee, as a hypothetical lien creditor pursuant to Section 544(a) of the Bankruptcy Code, has priority over Hoffer's claim. *In re Reiber's Inn of Westchester, Inc.*, 1 B.R. 304, 308 (Bankr.S.D.N.Y.1979), *aff'd*, 3 B.R. 706 (S.D.N.Y.1980).

### CONCLUSION

1. The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 152(a).

2. This is a core matter under 28 U.S.C. § 157(b)(2)(G) and (K).

3. Hoffer's motion to vacate the stay to continue execution on its judgment is denied. The proceeds of the checks payable to the order of the Debtor and the Lustig Firm are property of the Debtor's estate. The Trustee is entitled to the proceeds from the checks for the benefit of the Debtor's estate.

4. Hoffer has an unsecured claim against the estate in the sum of $25,000, plus interest to the date of the Petition.

5. This Decision does not make any determination as to Hoffer's judgment lien status as to any real property of this Debtor which may have been perfected.

Settle an order in accordance with this decision.