OPINION OF THE COURT
Charles E. Ramos, J.
In motion sequence No. 003, the Superintendent of Financial Services of the State of New York (the Superintendent) moves for an order determining Sage Realty Corporation’s (Sage) priority of payment for its claim against Jugobanka A.D., Beograd (Jugobanka) pursuant to Banking Law §§ 620 (3) and 624 (5).
Background
This action arises out of special proceedings administered by the Superintendent to liquidate the New York licensed agencies of two foreign banks, Jugobanka and Beogradska Banka A.D., Beograd (collectively the agencies).
These proceedings originated from the economic sanctions imposed by the US Government on Yugoslavia in 1992. At that time, the agencies were closed and their assets frozen for a decade. The assets were subject to a protracted litigation among competing bank receivers and creditors.
In February 1999, Sage was awarded judgment against Jugobanka in the amount of $2,900,135.51 with interest by the US District Court for the Southern District of New York (SDNY) in an action involving Jugobanka’s breach of an office lease in one of Sage’s buildings. The judgment was docketed the same day.
However, Jugobanka’s assets were in the possession of the US Treasury Department Office of Foreign Assets Control (OFAC). Subsequently, in March 1999, Sage wrote to OFAC requesting a license to enforce the judgment by levying against Jugobanka’s blocked assets. This request for a license was denied by OFAC.
Thereafter, Sage commenced another action in the SDNY challenging OFAC’s denial of its request. The court awarded OFAC summary judgment finding that OFAC’s denial of a license for Sage to enforce the judgment was not arbitrary or capricious, not an abuse of discretion, and was otherwise in ac *617 cordance with applicable law (Sage Realty Corp. v U.S. Dept. of Treasury, 2000 WL 272192, *6, 2000 US Dist LEXIS 2862, *19 [SD NY, Mar. 10, 2000, No. 99 Civ 3718 (RJW)]). Thus, no valid levy was possible.
In 2002, the Superintendent took possession of the agencies as the statutory receiver with the responsibility of resolving their affairs, including liquidating their assets and managing the claims process to pay off their creditors.
On July 22, 2011, the Superintendent commenced the claims process requesting that any claims be submitted by January 22, 2012.
On December 31, 2011, Sage submitted its proof of claim for the Jugobanka liquidation in the amount $6,327,352 and it asserted that Sage “obtained priority as a de facto execution judgment lien creditor before the Superintendent took custody of the funds in January 2002” (Snipes aff, exhibit A).
On July 25, 2012, the Superintendent accepted Sage’s claim based in part, on its status as a judgment creditor, but declined to give Sage’s claim priority. The Superintendent commenced this special proceeding pursuant to the Banking Law, which requires that “[a]ccepted claims in which priority of payment is duly demanded shall be presented to the supreme court on notice to the claimant for determination as to their priority of payment” (Banking Law § 624 [5]).
Discussion
The Superintendent correctly asserts that it does not have the statutory discretion to determine priority. The Banking Law clearly provides that “[t]he superintendent shall not determine priorities, in accepting or rejecting claims and the acceptance by the superintendent of a claim in which priority of payment is demanded shall not entitle the claimant to priority” (Banking Law § 624 [5]).
The Superintendent argues that Sage does not meet the requirements of a judgment lien creditor pursuant to article 52 of the CPLR because it never obtained a lien postjudgment. It never levied. Consequently, the Superintendent argues that Sage’s claim is not entitled to priority and it must be considered a general creditor.
While Sage admits that it could not obtain a lien or otherwise levy on its judgment, Sage contends that its 1999 application to OFAC for a license is the equivalent of Sage “delivering a levy *618 to a sheriff for execution under Article 52 of the CPLR” (Fellenbaum aff at 5). Sage argues that by applying to OFAC for the license and challenging its subsequent denial, it has taken all the possible steps to levy on its judgment.
This court finds that Sage, in fact, did everything in its power to enforce its judgment.
In Metro Burak, Inc. v Rosenthal & Rosenthal (83 Misc 2d 637, 643 [1975]), the court granted priority to a creditor despite the fact that its levy was returned unsatisfied and expired, as a result of the garnishee refusing to turn over the assets due to a conflicting claim arising from an assignment.
The court in Metro, believing “that it must give recognition and great weight to the essential purpose for which recording statutes have been enacted,” held that “[t]he rule that an execution creditor will lose his priority if he permits his execution to become dormant, does not apply where the delay in enforcing the execution does not result from the judgment creditor’s conduct” (Metro at 642, 643). Furthermore, “if the nature of the property prevents immediate levy and sale, . . . the judgment creditor cannot be held responsible for the delay, even when requested by him, and the dormancy doctrine is inapplicable” (11 Weinstein-Korn-Miller, NY Civ Prac ¶ 5234.11, citing Whipple v Foot, 2 Johns 418 [Sup Ct of Judicature, 1807]).
Professor David Siegel describes the state of the law in the area of determining adverse claims as follows: “If the competitors are both judgment creditors, and one has a CPLR lien superior to the other’s, the superior one will of course win. If neither has secured a lien, however, the governing principles will be drawn from outside the CPLR, from statute, caselaw, or equity” (Siegel, NY Prac § 521 [5th ed 2011]).
Ironically, if Sage had attempted to execute on its judgment, it would have priority during the period in which the execution was attempted, but would have lost its priority once the execution was returned unsatisfied because OFAC would have prevented any levy against Jugobanka’s assets. As a result of OFAC’s involvement, an attempt to levy may have actually resulted in a loss of priority (Matter of International Ribbon Mills [Arjan Ribbons], 36 NY2d 121, 124 [1975] [“it is settled law that whatever rights are obtained by issuance of the execution do not survive a return without satisfaction”]).
This result is contrary to long-standing equitable and common-law principles that traditionally favor a diligent credi *619 tor over creditors that are less diligent. Sage has expended tremendous resources in attempting to enforce its judgment, but was unable to do so through no fault of its own.
Sage has acted and continues to act promptly and diligently by recourse to the methods available with respect to the facts known to it to effect payment of its judgment.
For these reasons, this court finds that Sage’s rights can be held to be superior to those of the other creditors. However, those creditors have not yet had an opportunity to assert their claims of priority in this or any adverse claims proceeding. In order to enter a final determination in this matter, the Superintendent shall provide Sage with appropriate information regarding the other priority claimants, if any, so that they may be afforded an opportunity to contest the priority claim of Sage. The application for determination of the adverse claims shall be made in this processing.